ARTHUR GOLDSTEIN, receiver, vs. COLUMBIA
DIAMOND RING CO., INC.

Worcester.    November 7, 1974. — February 11, 1975.

Present: TAURO, C.J., QUIRICO, BRAUCHER, KAPLAN & WILKINS, JJ.

*Bankruptcy,* Preference, Fraudulent conveyance. *Insolvency. Fraudulent Conveyance.*

The receiver of a corporation could not recover under the provisions of
   the State insolvency statute, G. L. c. 216, § 110, a payment of money
   and transfer of merchandise made by the corporation to the defend-
   ant, even if such payment and transfer constituted a voidable
   preference, inasmuch as the existence of a Federal bankruptcy
   statute made c. 216 inoperative. [837-843]
No recovery upon a theory of fraudulent conveyance under G. L. c. 109A
   could be had where the plaintiff's declaration alleged that payment of
   money and transfer of merchandise by an insolvent corporation to the
   defendant were made in satisfaction of an antecedent debt, and failed
   to allege any actual intent on the part of the debtor corporation or the
   defendant to defraud other creditors. [843-844]

CONTRACT OR TORT.   Writ in the Central District Court
of Worcester dated May 3, 1972.

A demurrer to the action was heard by *Di Cicco,* J.

*Arthur Goldstein (Allan D. Goldstein & Steven A.
Kressler* with him) for the plaintiff.

*Russell F. Bath, Jr.,* for the defendant.

QUIRICO, J.   This is "an action of contract and/or tort"
brought by the plaintiff as the receiver of Lee Jewelers Inc.
(corporation) "for the recovery of an alleged preference"
paid by the corporation to the defendant. A judge of the
District Court sustained the defendant's demurrer to the
plaintiff's declaration, and, on report to the Appellate
Division, the judge's action was sustained and the report
dismissed. The case is here on the plaintiff's appeal from
the order of dismissal. There was no error.

Although the order sustaining the demurrer must be judged solely on the basis of the allegations contained in the declaration, the following undisputed factual background may help to clarify the setting in which this issue arose. A judge of the Superior Court appointed the plaintiff the corporation's temporary receiver on December 8, 1971, and the appointment was made permanent on February 9, 1972. The appointments were made in a proceeding brought against the corporation under G. L. c. 156B, § 105, inserted by St. 1964, c. 723, § 1,[1] by a creditor alleging that it had recovered a judgment against the corporation, that an execution had issued on the judgment, that a demand had been made on the corporation for payment of the amount due on the execution, and that the corporation had neglected, for thirty days after such demand, to pay the amount due or to disclose any of its lands, goods or chattels subject to be taken in payment thereof. The plaintiff brought the present action in his capacity as such receiver after obtaining authority from a judge of the Superior Court to do so.

We summarize the allegations in the plaintiff's declaration. In the spring, summer and fall of 1971 the corporation was insolvent and unable to pay its bills as they matured. When the plaintiff qualified as receiver of the corporation on December 8, 1971, the corporation had assets of about $12,000 and liabilities in excess of $150,000. On August 27, 1971, the defendant knew the corporation was insolvent because certain of its checks and notes payable to the defendant had been dishonored; and on that date the

---

[1] General Laws c. 156B, § 105, reads as follows: "If a judgment has been recovered against a corporation and it has neglected for thirty days after demand made on execution to pay the amount due with the officer's fees, or to exhibit to the officer real or personal property belonging to it and subject to be taken on execution sufficient to satisfy the same and the execution has been returned unsatisfied, one or more receivers may be appointed with the powers and duties provided in, and subject to, section one hundred and four."

Section 104 provides that such a corporate receiver shall "take charge of its estate and effects and . . . collect the debts and property due and belonging to it, with power to prosecute and defend suits in its name or otherwise . . . and to do all other acts which might be done by such corporation, if in being, which may be necessary for the final settlement of its unfinished business."

corporation paid the defendant the sum of $1,891.10 on a debt due it. Within four months prior to December 8, 1971, the exact dates not being alleged, the following events occurred: the defendant sold the corporation a quantity of diamond rings and other jewelry, the value thereof not being specified; on October 12, 1971, because of the corporation's nonpayment of a balance of $9,838.04 which it then owed to the defendant, the corporation returned to the defendant diamond rings and other jewelry having a value of $8,599.04. The plaintiff further alleges that the money thus paid and the merchandise returned by the corporation to the defendant "was a preference to the detriment to all of the creditors," and that the defendant therefore owes him the sum of $10,490.14, representing the combined total of the payments and value of the merchandise, plus interest.

The plaintiff argues that he is entitled to recover the total of the payments made and merchandise returned by the corporation to the defendant (herein collectively referred to as "the payment" when discussing the alleged preference) on two grounds. The first ground argued is that the payment was a voidable preference, and the second that it was a fraudulent conveyance. We shall consider each ground separately.


## A. Claim of Voidable Preference.

Although the plaintiff's claim that the corporation's payment to the defendant was a voidable preference seems to be based on G. L. c. 216 relating to Courts of Insolvency and proceedings therein, we start our consideration of this claim by an examination of the common law. It has been held in numerous decisions by this court that the act of a debtor in making payment or transferring property to one of his creditors by way of a preference over others is neither illegal nor voidable at common law. One of the early statements of the law on this subject is the following in *Banfield* v. *Whipple,* 14 Allen 13, 14-15 (1867): "The

preference of one debtor over another does not constitute a fraud at common law. If a debtor is unable to pay all his debts, he commits no fraud (in the absence of any statute provision regulating the distribution of insolvent estates) by appropriating his property to the satisfaction of one or more of his creditors to the exclusion of all others. Nor does it make any difference that both the creditor and debtor know that the effect of such appropriation will be to deprive other creditors of the power of reaching the debtor's property by legal process in satisfaction of their claims. If there is no secret trust agreed upon or understood between the debtor and creditor in favor of the former, but the sole object of a transfer of property is to pay or secure the payment of a debt, the transaction is a valid one at common law. The distinction is between a transfer of property made solely by way of preference of one creditor over others, which is legal, and a similar transfer made with a design to secure some benefit or advantage therefrom to the debtor, which is fraudulent and illegal." Language or holdings of the same tenor are found in *Lyon* v. *Wallace,* 221 Mass. 351, 353 (1915), *Rubenstein* v. *Lottow,* 223 Mass. 227, 230 (1916), *Gurney* v. *Tenney,* 226 Mass. 277, 279 (1917), *Cosmopolitan Trust Co.* v. *S. L. Agoos Tanning Co.* 245 Mass. 69, 73-74 (1923), *Banca Italiana Di Sconto* v. *Bailey,* 260 Mass. 151, 159 (1927), and *Baker* v. *Chisholm,* 268 Mass. 1, 3-4 (1929).

The plaintiff recognizes the common law rule to be as stated above, but he argues that it applies only in the absence of a statute providing to the contrary and that there is a statute to the contrary, viz., G. L. c. 216, §§ 110 and 111.[2] Chapter 216, § 1, provides that "the judge and

---

[2] These sections provide: § 110: "If a person who is insolvent or in contemplation of insolvency, within six months before the filing of the petition by or against him, in order to prefer a creditor or person having a claim against him or who is under any liability for him, procures any part of his property to be attached, sequestered or seized on execution, or makes a payment, pledge, assignment, transfer or other conveyance of any part of his property, either directly or indirectly, absolutely or conditionally, the person receiving such payment, pledge, assignment, transfer or conveyance, or to be benefited thereby, having reasonable cause to believe such person is insolvent or in contemplation of insolvency and that such payment, pledge, assignment, or conveyance is made in

register of probate and insolvency for each county shall be the judge and register of the court of insolvency therefor." It then contains comprehensive provisions, in considerable detail, for adjudications of insolvency and for the administration of the estates of insolvent persons and corporations. Section 110 authorizes the assignee in insolvency to recover money paid or property transferred by an insolvent debtor to a creditor within six months prior to the filing of the petition in insolvency, the debtor intending thereby to prefer that creditor and the creditor having reasonable cause to believe the debtor is insolvent.

Assuming, but without so deciding, that the facts alleged by the plaintiff in his declaration would, if proved, otherwise be sufficient to entitle him to recover the amount of the alleged preference, we are then faced with two questions: (1) is G. L. c. 216 presently operative, and (2) if it is, does the plaintiff, who was appointed receiver for the corporation by the Superior Court and was not chosen by the creditors or approved or appointed assignee of the corporation's estate by the Court of Insolvency, as provided in G. L. c. 216, § 49,[3] qualify to recover the amount of the preference under § 110? We answer the first question in the negative, thus making it unnecessary for us to reach the second.

To decide whether the State insolvency statute (G. L. c. 216) is presently operative, we must consider it in relation to the present Federal bankruptcy statute (Title 11 of the United States Code).

We have had comprehensive statutory provisions governing the administration of the estates of insolvent debt-

---

fraud of the laws relative to insolvency, it shall be void; and the assignees may recover the property or its value from the person so receiving it or so to be benefited." Section 111 contains almost identical language authorizing the recovery of property fraudulently sold or conveyed by an insolvent debtor.

[3] Section 49 provides in part: "The creditors shall, subject to the court's approval, choose one or more assignees of the estate of the debtor in the presence of the court at the first meeting. . . . If no choice is made by the creditors at said meeting, the court shall appoint one or more assignees. . . . The court may appoint additional assignees or order a new election, or it may at the first meeting without an election appoint one or more disinterested assignees."

ors in this Commonwealth continuously since the enactment of St. 1838, c. 163, which gave jurisdiction over such cases to Commissioners of Insolvency. By St. 1856, c. 284, §§ 1, 2, and 41, this jurisdiction was transferred to the Courts of Insolvency where it has remained to this date. *Dearborn* v. *Ames,* 8 Gray 1, 9, 13, 19 (1857). *Opinion of the Justices,* 8 Gray 20 (1857). By contrast, Federal bankruptcy statutes have from time to time been enacted and repealed, with the result that they have been in effect only in the following years: 1800 to 1803, 1841 to 1843, 1867 to 1878, and 1898 to date.[4] The Constitution of the United States, in art. 1, § 8, expressly authorizes the Congress "to establish . . . uniform laws on the subject of bankruptcies throughout the United States."

Although the question now before us does not arise frequently, it is by no means novel. It appears to have been first presented to this court directly and answered fully in *Griswold* v. *Pratt,* 9 Met. 16 (1845), in language which included (at 17-19) the following: "The general question of the validity and the effect of state insolvent laws has been very fully considered in the leading cases of *Sturges* v. *Crowninshield,* 4 Wheat. 122 [1819], and *Ogden* v. *Saunders,* 12 Wheat. 213 [1827]. In default, on the part of the national government, to enact a bankrupt law, many of the States had enacted insolvent laws, of a very extended character, directly discharging all debts of the insolvent . . .. These state laws were apparently coextensive, in all their purposes and effects, with a general bankrupt law. . .. [A]nd questions as to the validity of such laws came to be fully discussed before the supreme court of the United States. . . . The result of these judicial inquiries and decisions was, as is well known, that it was held that the power, vested in congress, to enact a bankrupt law, did not supersede the

---

[4] The several Federal bankruptcy statutes were enacted and repealed as follows: (1) April 4, 1800, c. 19, 2 Stat. 19, repealed December 19, 1803, c. 6, 2 Stat. 248. (2) August 19, 1841, c. 9, 5 Stat. 440, repealed March 3, 1843, c. 82, 5 Stat. 614. (3) March 2, 1867, c. 176, 14 Stat. 517, incorporated in Rev. Sts. Title LXI, §§ 4972-5132, and repealed June 7, 1878, c. 160, 20 Stat. 99. (4) Bankruptcy Act of July 1, 1898, c. 541, 30 Stat. 544, as amended, now Title 11 of the United States Code.

right and authority of the several States to enact insolvent laws, while the power remained dormant, and was not called into exercise by any act of legislation of congress on the subject; and that the mere existence of the power in the national government to act on the subject was not an absolute restriction upon the powers of the several States to act in the matter, in the absence of any existing bankrupt law . . .. In these discussions and judicial opinions, which were pronounced by the members of the supreme court of the United States, it seems, however, to be assumed or held as unquestioned, that if the authority, conferred by the constitution, to establish such uniform bankrupt system, was exercised by congress, and a bankrupt law was actually in force, all state legislation on the matter would be at once superseded; certainly, as to all cases falling within the provisions of such bankrupt law. Thus, in *Sturges* v. *Crowninshield*, 4 Wheat. 196 [1819], it is said, 'it is not the right to establish these uniform laws, but their actual establishment, which is inconsistent with the partial acts of the States.' " After further discussion, this court concluded (at 23): "Considering our insolvent law to be a system introduced for the purpose of sequestering the effects of an insolvent debtor, and of discharging him from all debts contracted after the enactment of the law, we are satisfied that the two systems cannot stand together; that the provision of the constitution, authorizing congress to establish a uniform bankrupt law, does not of itself prevent the enacting of insolvent laws by the individual States; yet that when the power is exercised by congress, and a bankrupt law is in force, it does suspend all state insolvent laws applicable to like cases, and that this effect follows the enactment of such bankrupt law, and does not require the actual institution of proceedings in bankruptcy to produce such result."

Notwithstanding the passage of about 130 years since this court used the language quoted above from the *Griswold* case, and notwithstanding the changes which have been made in those years to both our State insolvency statute and the Federal bankruptcy statutes, the same rule

stated and applied in that case applies in the present case. *Lothrop* v. *Highland Foundry Co.* 128 Mass. 120, 121-122 (1880). *Lyman* v. *Bond,* 130 Mass. 291, 293 (1881). *Parmenter Mfg. Co.* v. *Hamilton,* 172 Mass. 178 (1898). *Commonwealth* v. *Commissioner of Banks,* 240 Mass. 244, 248 (1922). See Williston, The Effect of a National Bankruptcy Law Upon State Laws, 22 Harv. L. Rev. 547 (1909). On the passage by the Congress of the Bankruptcy Act of July 1, 1898, which, as amended, is now Title 11 of the United States Code, the operation of our State insolvency statute, now G. L. c. 216, was suspended and continues to be suspended. On the facts of the present case the plaintiff has no rights or remedies available to him under the suspended statute.

The plaintiff points out that G. L. c. 216, § 14, was amended by St. 1973, c. 705, § 2, to read: "Each county shall provide . . . a suitable fireproof room where the records, books, documents and papers relative to the business of the court and the records in insolvency *may* be kept" (emphasis supplied). The amendment consisted solely of the substitution of the emphasized word "*may*" for the former word "shall." He then argues that "[i]f G. L. Chapter 216 is suspended, where no bankruptcy has been filed, by the Bankruptcy Acts of 1898 as currently amended, . . . [there] would seem to be no logical reason for the legislature to amend any portion of that statute." This argument is without merit. Section 3 of c. 705 amends G. L. c. 221, § 27A, by adding thereto a provision that "[a]ny papers or records which have been filed or deposited in any court of the commonwealth may be moved to places of storage approved by the supreme judicial court." The title of c. 705 is, "An Act authorizing the use of facilities approved by the supreme judicial court for storage of old court records." It is clear from a reading of c. 705 in its entirety, including its title, that the amendment of a single word in G. L. c. 216, § 14, was to facilitate the removal of court records, including pre-1898 records of Courts of Insolvency, from court buildings and their transfer to other

depositories. This is entirely consistent with the present inoperative status of G. L. c. 216.

Having concluded that G. L. c. 216 is inoperative by reason of the existence of the Federal bankruptcy statute, we need not consider the subsidiary question whether the plaintiff who is the receiver for the corporation, but not an assignee chosen or appointed pursuant to G. L. c. 216, § 49, may recover the amount of the preference allegedly given by the corporation to the defendant. We add only the observation that if G. L. c. 216 were operative, the remedy provided in § 110 for the recovery of a preference would probably be available only to an assignee chosen or appointed under § 49.

### B. Claim of Fraudulent Conveyance.

It is doubtful whether the plaintiff originally intended the language contained in his declaration to be a claim of recovery based on an alleged fraudulent conveyance by the corporation to the defendant. However, he now argues that his declaration alleges facts which adequately constitute such a claim. We disagree.

Basically, the plaintiff contends that the corporation's payment and transfer of merchandise to the defendant constituted a fraudulent conveyance within the proscription of the uniform fraudulent conveyance law contained in G. L. c. 109A, and that his declaration states a claim for recovery under that statute. Peripherally the plaintiff cites G. L. c. 216, § 111, relating to fraudulent conveyances by insolvent persons, and G. L. c. 106, art. 6, the "Uniform Commercial Code — Bulk Transfers," particularly § 6-102 thereof. We have already held above that G. L. c. 216 is currently inoperative and no further discussion of that statute is required. The several sporadic references to § 6-102 relating to bulk transfers do not reach a level which can be considered argument on that subject requiring our attention. S.J.C. Rule 1:13, 351 Mass. 738 (1967).

The declaration is fatally deficient in two respects as an intended claim of relief under the uniform fraudulent conveyance law. Section 4 states that a conveyance by an insolvent "is fraudulent as to creditors . . . if . . . made . . . without a fair consideration." Section 3 states that "[f]air consideration is given for property . . . [w]hen in exchange for such property . . . an antecedent debt is satisfied." The declaration alleges that the corporation's payment and transfer of merchandise to the defendant were made in satisfaction of an antecedent debt. They were therefore made for a "fair consideration" within the meaning of the statute. Section 7 states that "[e]very conveyance made . . . with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, is fraudulent as to both present and future creditors." The declaration contains no express allegations of any actual intent on the part of the corporation or the defendant to hinder, delay or defraud other creditors of the corporation, and it contains no allegations from which such intent can be inferred. No useful purpose would be served by prolonging the discussion on this point. It is accurately and adequately covered by the opinion of the Appellate Division.

The plaintiff's brief ranges far and wide in the discussion of numerous points of little, if any, relevance to the decisive issues which we have disposed of in our holdings above. We do not believe that it would add anything to our jurisprudence to include either identification or discussion of these other points in this opinion.

The order of the Appellate Division dismissing the report is affirmed.

*So ordered.*