Anheuser-Busch, Inc., & another[1] *vs.* Alcoholic
Beverages Control Commission.

No. 08-P-584.

Suffolk. December 4, 2008. - September 10, 2009.

Present: Grasso, Katzmann, & Sikora, JJ.

*Alcoholic Liquors,* Alcoholic Beverages Control Commission, License, Certificate of compliance, Supplier, Wholesaler. *Statute,* Construction. *Administrative Law,* Agency's interpretation of statute.

Discussion of G. L. c. 138, §§ 18 and 18B, the statutes authorizing the Alcoholic Beverages Control Commission to regulate the in-State activity of out-of-State manufacturers and suppliers of alcoholic beverages, and to license wholesalers of alcoholic beverages. [205-207]

A Superior Court judge did not err in affirming a decision of the Alcoholic Beverages Control Commission (commission) to cancel an "all alcoholic beverages" license issued to a Massachusetts wholesale distributor that was a wholly owned subsidiary of an out-of-State manufacturer and supplier, where it was undisputed that the wholesaler held a beer and wine license before January 1, 1966, but not an all alcoholic beverages license, as required to satisfy the grandfather provision of G. L. c. 138, § 18B [207-208]; where amendments to G. L. c. 138, §§ 18 and 18B, evinced public policy concerns of the Legislature that supported the court's conclusion [208-209]; and where deference to the commission's interpretation and application of the statutory provisions served both the plain meaning and the clear policy of the statute [209].

Civil action commenced in the Superior Court Department on January 8, 2008.

The case was heard by *Bruce R. Henry,* J.

*H. Glenn Alberich* for the plaintiffs.

*Sookyoung Shin,* Assistant Attorney General, for the defendant.

*Louis A. Cassis* for Wine and Spirits Wholesalers of Massachusetts, Inc., amicus curiae, submitted a brief.

---

[1]August A. Busch & Company of Massachusetts, Inc.

SIKORA, J. The plaintiffs, Anheuser-Busch, Inc. (AB), and August A. Busch & Company of Massachusetts, Inc. (AB MA), appeal from a judgment of the Superior Court affirming a decision of the defendant, Alcoholic Beverages Control Commission (Commission). The Commission cancelled the wholesaler's license of AB MA to sell unlimited kinds of alcoholic beverages and effectively restricted that company's authorization to the wholesale distribution of beer and wine products. The material facts of the case are undisputed. The outcome turns on a question of statutory construction. For the following reasons, we affirm the judgment of the Superior Court.

*Facts.* AB is a Missouri corporation engaged in the manufacture of various malt alcoholic beverages. As an out-of-State supplier since at least 1963, it has maintained proper certification under Massachusetts law to sell its products to duly licensed wholesalers in Massachusetts.[2] AB MA is a Massachusetts corporation and a wholly owned subsidiary of AB. Since at least 1963, it has maintained a license to engage in the wholesale distribution of certain alcoholic products (defined as the sale of those products for resale) within the Commonwealth.[3] AB MA's wholesaler license confined it to the sale of beer and wine products. In 2006, it applied for a wholesaler license to distribute unlimited kinds of alcoholic beverages, i.e., beer (malt beverages), wine, distilled spirits (hard liquor), cordials, and liqueurs. On the basis of a report and recommendation of one of its investigators, and without a hearing, the Commission granted AB MA the requested "all alcoholic beverages" wholesaler license.

From late 2006 through most of 2007, AB MA engaged in an expanding volume of sales of distilled spirits to retailers. In June of 2007, the Wine & Spirits Wholesalers of Massachusetts, Inc. (WSWM), a trade association comprised of Massachusetts wholesalers of wine and distilled spirits, submitted to the Commission a written complaint challenging the validity of AB MA's expanded all alcoholic beverages license. AB and AB MA filed a written response. Consequently, in November of 2007, the Commission conducted an adjudicatory hearing on the complaint, and on December 7, 2007, issued its decision cancelling the all alco-

---

[2]Pursuant to G. L. c. 138, § 18B, discussed *infra*.
[3]Pursuant to G. L. c. 138, § 18, discussed *infra*.

holic beverages license as of the close of December 31, 2007. The decision did not bar AB MA from applying for reinstatement of its prior wholesaler beer and wine license. The Commission reasoned that the language of controlling statutes prohibited the grant of the all alcoholic beverages license to AB MA in 2006.[4]

The ensuing litigation moved swiftly. In early January, 2008, AB and AB MA filed an action for judicial review of the Commission's decision in the Superior Court under G. L. c. 30A, § 14(7). In late January, a judge granted their request for a temporary restraining order, but in early February denied their application for preliminary injunctive relief, resolved the dispositive question of statutory interpretation against them, and entered final judgment in favor of the Commission. In substance, applicable standards of the Administrative Procedure Act reduced the plaintiffs' claims in the Superior Court to the sole contention that the Commission had committed an error of law within the meaning of G. L. c. 30A, § 14(7)(c), by misinterpretation of the pertinent statutory licensure provisions. We address that contention.

1. *Literal analysis.* We begin with several basic concepts and definitions of our beverage jurisprudence. "Massachusetts law requires that alcoholic products sold in this State by manufacturers or suppliers be sold initially to licensed Massachusetts wholesalers. Those wholesalers in turn sell to retailers who sell to consumers." *Heublein, Inc.* v. *Capital Distrib. Co.,* 434 Mass. 698, 699 (2001). For present purposes, several statutes govern the progression of alcoholic beverages through the three tiers comprised of the manufacturer/supplier, the wholesaler/distributor, and the retailer.

By G. L. c. 138, § 18B, inserted by St. 1943, c. 542, § 9, the Legislature has assigned to the Commission the authority to regulate the Massachusetts activity of out-of-State manufacturers and suppliers by issuance of an annual "certificate of compli-

---

[4]Specifically, the Commission determined that the plaintiffs must have met three time-sensitive requirements for entitlement to "an all alcoholic beverages license under G. L. c. 138, § 18B": (1) the plaintiffs must have held the all alcoholic beverages license on the effective date of St. 1971, c. 1002; (2) the all alcoholic beverages license must have been issued prior to January 1, 1966; and (3) AB MA must have paid excise taxes on the all alcoholic beverages license for thirty-six consecutive months prior to January 1, 1966. The Commission ruled that the plaintiffs had met none of these requirements.

ance" and by requirement of a certificate holder's regular submission of "information concerning all shipments or sales of alcoholic beverages" made by it to licensed wholesalers in the Commonwealth.[5] By G. L. c. 138, § 18, it has authorized the Commission to license wholesalers to purchase beverages from in-State or out-of-State manufacturers or suppliers for resale to other wholesalers and to retailers. A wholesaler's license under § 18 may authorize comprehensively the resale of "all alcoholic beverages" or more restrictively the resale of "wines and malt beverages." The annual fee for the broader all alcoholic beverages license substantially exceeds the "wine and malt beverages" (beer and wine) license fee.[6] By G. L. c. 138, §§ 12 and 15, the Legislature has apportioned oversight of retail activity, the third level of distribution, between municipal bodies and the Commission. That regulatory echelon plays no role in our case.

In 1971, the Legislature enlarged the terms of § 18B by enactment of St. 1971, c. 1022, entitled "An act prohibiting a foreign distiller from holding a wholesaler's license under the alcoholic beverages control laws." As amended § 18 provides that "[n]o person who holds a [manufacturer's or supplier's] certificate under this section shall hold or be granted a [wholesaler's] license under section eighteen."[7] In the case of corporate certificate holders and licensees, it establishes cross ownership of ten percent or more of the other entity as tantamount to the prohibited common holding.[8]

The 1971 legislation included a grandfather provision preserving the right of an out-of-State manufacturer or supplier then currently holding a certificate to maintain a wholesaler's license

---

[5]The certificate holder must also comply generally with any pertinent provisions of G. L. c. 138 and pursuant regulations of the Commission. *Ibid.*

By G. L. c. 138, § 19, the Legislature has empowered the Commission to license manufacturers to create and to sell their products, to import and to export them, and to comply with regulations prescribed by the Commission for product quality and identification, containers, record keeping, inspection, and licensure fees.

[6]Section 18 prescribes an annual flat fee of $10,000 for the all alcoholic beverages license and a variable fee for the beer and wine license calibrated to yearly gallonage of sales but capped at $5,000.

[7]Codified as G. L. c. 138, § 18B, second par.

[8]Codified as G. L. c. 138, § 18B, fourth par.

upon satisfaction of two conditions. This case pivots on the meaning of the following grandfathering language.[9]

> "Nothing contained in [§ 18B as currently amended] shall prohibit a certificate holder . . . from continuing to hold a license under [§ 18], provided that such license was issued prior to January first, nineteen hundred and sixty-six and said licensee had paid alcoholic beverage excise taxes . . . for at least thirty-six consecutive months prior to January first, nineteen hundred and sixty-six."

It is undisputed that AB MA has always been a wholly owned subsidiary of AB; that AB MA held its wholesaler license for beer and wine before January 1, 1966; and that it paid all required excise taxes for its beer and wine wholesaler license throughout the thirty-six months before January 1, 1966.[10] Before the Commission, the WSWM challenged the entitlement of AB MA to its 2006 all alcoholic beverages wholesaler license because it had not held that comprehensive license, but only the limited beer and wine wholesaler license, before January 1, 1966. AB MA responded that the grandfather provision protecting a holder of "*a* license under [section 18]" means that possession of *either* a beer and wine license *or* an all alcoholic beverages license preserved the entitlement to procure an all alcoholic beverages license after the enactment of the 1971 amendment. Both the Commission and the Superior Court judge rejected that construction. For the following reasons we do also.

The proposed interpretation requires us to convert the phrase "*a* license" to "*any* license" to engage in wholesale activity. The 1971 Legislature was presumably aware of the two distinctive wholesaler licenses and could have used the alternative wording if it had intended it. More telling, though, is the Legislature's expression that an out-of-State manufacturer or supplier not be forbidden "from *continuing* to hold a [wholesaler] license . . . , provided that *such* license" was issued before January 1, 1966, and that the licensee had paid the required prior excise taxes. The

---

[9]Statute 1971, c. 1022, § 2. This provision does not appear in the codified text of G. L. c. 138, § 18B, but rather as a statutory note following the text.

[10]In their brief, AB and AB MA report that they have held their respective certificate and license for at least sixty years.

words "continuing" and "such" necessarily refer to a specific antecedent. The only antecedent fitting that requirement is the pre-existing beer and wine license. As the Commission points out, the demonstrative adjective "such" is a limiting, not an enlarging, modifier. See, e.g., *United States* v. *Pittman*, 151 F.2d 851, 852 (5th Cir. 1945) (the word "such" is "descriptive and limiting, referring always to a class just before pointed out"); *Peabody Coal Co.* v. *Environmental Protection Agency*, 522 F.2d 1152, 1153 (8th Cir. 1975) (the word "such" is "one of limitation which ties the word it modifies to a thing or category previously pointed out"). We must treat the word as purposeful, and not superfluous. See, *e.g.*, *Negron* v. *Gordon*, 373 Mass. 199, 205 (1977).

2. *Functional analysis.* The visible purpose of the 1971 amendment reinforces a restrictive application of the text of the grandfather clause. The title of the legislation was "[a]n act prohibiting a foreign distiller from holding a wholesaler's license under the alcoholic beverages control laws." The courts are free to consult the title of an act as an aid for the application of its text. See, e.g., *Massachusetts Soc. for the Prevention of Cruelty to Animals* v. *Commissioner of Pub. Health*, 339 Mass. 216, 223 (1959); *Bellows Farms, Inc.* v. *Building Inspector of Acton*, 364 Mass. 253, 258-259 (1973); *Goldstein* v. *Columbia Diamond Ring Co.*, 366 Mass. 835, 842-843 (1975). Here, the public policy of the 1971 legislation was the prohibition, prospectively, of vertical integration of the manufacture and distribution of alcoholic beverages in the Commonwealth.

The Legislature returned to the subject in 1975 by consideration of provisions forbidding wholesale licensees under G. L. c. 138, § 18, from holding retail licenses under G. L. c. 138, § 15, with definitions of cross ownership similar to those of the 1971 provision. In *Opinion of the Justices to the House of Representatives*, 368 Mass. 857, 861-862 (1975), the Supreme Judicial Court advised that such a prohibition (with its allowance of a five-year cushion period for divestment) would not violate substantive due process because, among other reasons, it served a valid public interest against concentrated ownership of wholesale and retail enterprises and the concomitant anticompetitive impact upon independent wholesalers, small retailers, and consumers

seeking a wider variety of retail products. The same considerations would favor implementation of, rather than exemption from, the policy against vertical integration between manufacturers and wholesalers. That purpose converges with the natural meaning of the limited grandfathering language under inspection here.

3. *Deference to agency interpretation.* Finally, the Commission's interpretation and application of a statutory provision entrusted to it for enforcement are entitled to appropriate respect. See *Casa Loma, Inc.* v. *Alcoholic Bevs. Control Commn.,* 377 Mass. 231, 235 (1979); *Beverages Intl., Ltd.* v. *Alcoholic Bevs. Control Commn.,* 24 Mass. App. Ct. 708, 711-712 (1987); *Somerset Importers, Ltd.* v. *Alcoholic Bevs. Control Commn.,* 28 Mass. App. Ct. 381, 385 (1990). Deference is not abdication. It does not permit a detectable "error of law" by the agency. *Heineken U.S.A., Inc.* v. *Alcoholic Bevs. Control Commn.,* 62 Mass. App. Ct. 567, 572 (2004). See *Commissioner of Rev.* v. *McGraw-Hill, Inc.,* 383 Mass. 397, 400-402 (1981). If an agency interpretation were to collide with the plain meaning of a statute, the agency view would have to give way. In this instance, however, they blend strongly in support of the administrative decision and the Superior Court judgment. Deference serves plain meaning and a clear statutory policy.

*Judgment affirmed.*