NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

15-P-1439                                      Appeals Court

MIKEL WEISS vs. CITY OF CAMBRIDGE.

No. 15-P-1439.

Middlesex.       May 12, 2016. - July 28, 2016.

Present:  Rubin, Milkey, & Neyman, JJ.

Negligence, Motor vehicle, Pedestrian, Contributory, Violation
    of statute. Statute, Construction. Practice, Civil,
    Instructions to jury, New trial.

Civil action commenced in the Superior Court Department on
February 14, 2013.

The case was tried before Peter B. Krupp, J., and a motion
for a new trial was considered by him.

Keplin K. U. Allwaters, Assistant City Solicitor, for the
defendant.
Christopher C. Mathers for the plaintiff.

MILKEY, J.  During the evening rush hour of December 7,

2011, Mikel Weiss was walking across 2nd Street in Cambridge, at

its intersection with Binney Street.  Before she reached the

other side, Weiss was struck by a truck that was making a left-

hand turn onto 2nd Street from Binney Street.  The driver of the

truck (driver) was an employee of the city of Cambridge (city), who was completing a ten-plus hour shift.[1]  As a result of the accident, Weiss suffered serious long-term injuries to both knees, incurred significant medical bills, and missed several weeks of work.  In the personal injury action that Weiss brought against the city in Superior Court, the main disputed issue was the relative degree of fault between pedestrian and driver. Weiss was in a marked crosswalk when she was struck, but there was evidence that she was not obeying the pedestrian signal at the time.  The jury found Weiss thirty-five percent at fault, and therefore her damages award was reduced by that percentage.[2] On appeal, the city challenges the instructions the judge gave to the jury regarding the responsibilities that drivers face pursuant to G. L. c. 89, § 11, to yield to pedestrians in marked crosswalks.  The city argues that under its plain language, the statute does not apply to the circumstances of this case.  We disagree and therefore affirm.

Background.  The accident.  According to undisputed trial testimony, Binney Street is a "major traffic artery" that is four to five lanes wide at its intersection with 2nd Street.

---

[1] The truck was owned by the city, and the driver was returning it to its garage.

[2] With the jury having found Weiss's total damages to be $70,000 and the driver sixty-five percent at fault, judgment entered awarding Weiss $45,000.

For its part, 2nd Street is "more of a side street" that measures only twenty-four feet across. At the intersection, there is both a crosswalk across 2nd Street and a pedestrian signal (commonly known as a "walk light") to inform pedestrians when they may use the crosswalk. Two witnesses testified, without contradiction, that the traffic and pedestrian signals at the intersection were synchronized so that drivers making a left-hand turn off of Binney Street would have had a green arrow allowing them to proceed only when the walk light at 2nd Street displayed the familiar icon of a steady, orange upright hand (instructing pedestrians not to cross). Witnesses described the road conditions at the time variously as "cold, wet, rainy," "a dark night . . . [with] heavy mist . . . [and] the roads were wet," and "poor visibility, dark, rainy."

Weiss testified that before she began crossing 2nd Street, she looked for oncoming traffic and checked the walk light (which she stated had already changed from the stick figure of a pedestrian to a flashing upright hand). An eyewitness to the accident, who was stopped in her vehicle on 2nd Street at the intersection, contradicted Weiss in two respects. The eyewitness testified that Weiss had not looked before entering the intersection and that the walk light had already changed to a steady upright hand by the time Weiss began to cross.

The driver testified that he waited three minutes in the dedicated left-hand turn lane on Binney Street for the light to change, and that he entered the intersection only after he saw the green arrow.  He also testified that as he was making his left hand turn, he quickly looked over his right shoulder because he heard someone in that direction exclaim "hey," which "startled" him and made him think "like maybe [he] had cut off a bicycle or something."  After he returned his vision to his path of transit, he saw nothing in front of his vehicle "[a]nd then from outside [his] vision on [his] left-hand side, Ms. Weiss stepped in front of the vehicle."[3]  Once he spotted her, he applied the brakes and skidded on the pavement, which was wet, before hitting Weiss.  The driver testified that even though he was driving no more than ten miles per hour at the time, the accident could have been avoided had he been driving slower or had the truck not slid on the wet roadway.

The jury instructions.  The judge instructed the jury with respect to the regulatory obligations that pedestrians face at signaled crosswalks pursuant to Federal guidelines incorporated into State law.  See G. L. c. 85, § 2; 23 C.F.R. § 655.603 (2010) (requiring States to follow the Manual on Uniform Traffic

---

[3] As the eyewitness in the vehicle stopped on 2nd Street watched Weiss cross in front of her walking toward the lane into which the driver was turning, she commented to a passenger in her vehicle, "[H]e is not going to stop," to which the passenger responded, "[H]e'll see her."

Control Devices for Streets and Highways of the Federal Highway

Administration of the United States Department of

Transportation).  Specifically, the judge instructed that:

> "The parties agree that in the context of the
> intersection at issue in this case, under US Department of
> Transportation guidelines, a flashing upraised hand on a
> pedestrian signal means the pedestrian shall not start to
> cross the roadway, but that any pedestrian who has already
> started to cross shall proceed to finish crossing the
> street.  A steady upraised hand on a pedestrian signal
> means that a pedestrian shall not enter into the roadway in
> the direction of the pedestrian signal."

The judge also instructed the jury that they could take any

violation of those guidelines by Weiss as some evidence of her

contributory negligence.  The propriety of those instructions is

not at issue in this appeal.

Over the city's objection,[4] the judge instructed the jury

regarding a driver's regulatory responsibilities at crosswalks

pursuant to G. L. c. 89, § 11.  Specifically, the judge stated

as follows:

> "Now, under -- under a Massachusetts statute,
> specifically, General Laws Chapter 89, Section 11, no
> driver of a motor vehicle may enter a marked crosswalk
> while a pedestrian is crossing, even if the traffic control
> signal indicates that the vehicle may proceed.  The
> violation of a motor vehicle statute or regulation may be
> evidence of a breach of the duty of care.  If you find that
> [the driver] violated any safety statute, ordinance or
> regulation applicable to him, including General Laws
> Chapter 89, Section 11, and that the eventual accident was
> one of the things that the statute was designed to prevent,

---

[4] The city objected to this instruction both before and
after it was given.

then the violation is some evidence of negligence on his part."

After trial, the city filed a motion for new trial based on this allegedly erroneous instruction. Before us now is the city's appeal of the judgment and the order denying its motion for new trial.

Discussion. The city's appeal turns on a simple question of statutory interpretation. We begin by examining the statutory language, which is the principal indicator of legislative intent. See Commonwealth v. Mogelinski, 466 Mass. 627, 633 (2013) ("As with all matters of statutory interpretation, we look first to the plain meaning of the statutory language").

The pertinent language in G. L. c. 89, § 11, as amended by St. 2004, c. 170, § 2, states as follows:

"No driver of a vehicle shall pass any other vehicle which has stopped at a marked crosswalk to permit a pedestrian to cross, nor shall any such operator enter a marked crosswalk while a pedestrian is crossing or until there is a sufficient space beyond the crosswalk to accommodate the vehicle he is operating, notwithstanding that a traffic control signal may indicate that vehicles may proceed."

The parties agree that where this sentence applies, it means that drivers who enjoy a green traffic light (signaling that they may proceed through the intersection) still must yield to pedestrians who are using a marked crosswalk. The dispute is over whether this statutory edict applies generally (as the

judge concluded) or only in narrow circumstances (as the city argues). The specific question is the intended breadth of the reference in the second clause to "any such operator." Based on the language in the first clause of the just-quoted sentence, the city contends that "any such operator" was intended to refer to only the subset of drivers who trail behind another vehicle that has stopped at a crosswalk. Case law interpreting the word "such" provides some superficial support for the city's position. See, e.g., Anheuser-Busch, Inc. v. Alcoholic Bevs. Control Commn., 75 Mass. App. Ct. 203, 207-208 (2009) (interpreting "such" as a word of limitation referring to a specific antecedent). However, a closer examination of the statutory language supports the judge's view.

The language in the first clause does not, as the city would have it, speak in terms of a narrow subset of all drivers.[5] Instead, the first clause is phrased in terms of prohibiting any driver from engaging in a particular practice (passing vehicles that are stopped at a crosswalk). The second clause prohibits drivers from engaging in a different practice ("enter[ing] a marked crosswalk while a pedestrian is crossing or until there is a sufficient space beyond the crosswalk to accommodate the

---

[5] The city treats the beginning language of the first clause as if it had said, "No driver of a vehicle that is behind any other vehicle which has stopped at a marked crosswalk to permit a pedestrian to cross shall pass . . . ."

vehicle he is operating"). Given this grammatical construction, the most natural reading of "such operator" is simply as a reference back to a "driver of a vehicle." See Commonwealth v. Daley, 463 Mass. 620, 624 (2012) (applying rules of grammar to statutory interpretation). The plain language of the statute thus supports the judge's interpretation, not the city's.

Although less natural, the city's reading of the statute is linguistically possible. This provides the city an opening to argue that its reading is necessary to further the purpose of the statute. See DiFiore v. American Airlines, Inc., 454 Mass. 486, 495-496 (2009), and cases cited (where the purpose of a statute is plain, rules of punctuation and grammar are not determinative). See also United States v. Whitbridge, 197 U.S. 135, 143 (1905) (Holmes, J.) (legislative purpose is a "more important aid" in discerning statutory "meaning than any rule which grammar or formal logic may lay down"). However, the obvious purpose of the statute is to protect pedestrians from being hit by vehicles in marked crosswalks, and it is the judge's interpretation that furthers that goal.[6] It would be a curious result if the Legislature had said that drivers who have a green light nevertheless must not enter a crosswalk in which a

---

[6] We note that the act, St. 2004, c. 270, § 2, that inserted into G. L. c. 89, § 11, the language "while a pedestrian is crossing" was entitled "An Act Relative to Pedestrian Safety at Crosswalks."

pedestrian is walking, but only in the limited circumstances
where a vehicle ahead of them already has stopped.

In addition, we note that if the second clause were
interpreted as narrowly as the city posits, that clause would
serve no effective purpose.  That is because where a driver of a
vehicle finds himself behind another vehicle at a crosswalk, he
could not enter the crosswalk without passing the stopped
vehicle (already a violation under the first clause).  Thus, the
city's interpretation renders the second clause superfluous, a
disfavored outcome.  See Commonwealth v. Millican, 449 Mass.
298, 300 (2007), quoting from Commonwealth v. Woods Hole,
Martha's Vineyard & Nantucket S.S. Authy., 352 Mass. 617, 618
(1967) ("None of the words of a statute is to be regarded as
superfluous").[7]

Although we do not rely on this observation, we note that
the judge's interpretation also appears consistent with

---

[7] For its part, the city argues that the judge's
interpretation of the second clause would render the first
sentence of G. L. c. 89, § 11, superfluous.  That sentence sets
forth a driver's obligation to yield to pedestrians in
crosswalks in circumstances where "traffic control signals are
not in place or not in operation."  G. L. c. 89, § 11, inserted
by St. 1967, c. 405, § 1.  The first sentence would be
unnecessary, the city argues, if drivers had a general duty not
to "enter a marked crosswalk while a pedestrian is crossing."
While there is some overlap between the two sentences, they are
hardly wholly duplicative; one addresses a driver's specific
duties where there are no traffic control signals, while the
other sets forth a driver's general obligations (even where
there are traffic control signals and even where those signals
indicate that the driver may proceed).

generally understood rules of the road.  See, e.g., Nolan &

Sartorio, Criminal Law § 573, at 570 (3d ed. 2001) (stating that

"[c]rosswalks . . . must be honored by [a driver] even in the

face of a traffic control signal which permits him to proceed").[8]

In fact, the driver in the case before us acknowledged at trial

that he understood that a pedestrian has the right of way in a

marked crosswalk regardless of whether the driver had a green

light.[9]

The city additionally argues that the instruction regarding

G. L. c. 89, § 11, is flawed because it "contradict[s]" the

instruction regarding a pedestrian's duties to obey walk lights.

This argument requires little discussion.  There is no conflict

between the two parallel regulatory schemes, one of which is

applicable to pedestrians and the other applicable to drivers.

As the trial judge aptly put it at the charge conference,

"[T]here's no suggestion that a stop signal for a pedestrian,

that is to say, a pedestrian crossing signal somehow trumps or

negates the obligation of the driver to stop for a pedestrian in

---

[8] See also Kenney & Farris, Motor Vehicle Law and Practice § 10.3(j), at 374 (4th ed. 2008), which states without qualification that, "[b]y statute, a driver must stop at a crosswalk if a pedestrian is in the crosswalk in the driver's half of the traveled way, or if the pedestrian approaching from the opposite half of the traveled way is within 10 feet of the midline of the way."

[9] The driver even went so far as to acknowledge that Weiss in particular had the right of way in this case.

the crosswalk."[10]  As was demonstrated in the case before us, both pedestrians and drivers are capable of violating their respective regulatory obligations, and it is up to juries to sort out their relative degree of fault.  The jury performed their assigned role here, and the city has provided no valid reason to overturn their verdict.[11]

Judgment affirmed.

Order denying motion for new trial affirmed.

---

[10] Put differently, there is nothing irrational about prohibiting both pedestrians and drivers from entering a crosswalk while the other is present, in the hope that at least one side will obey its regulatory duties.

[11] To the extent that the city separately argues that the jury instruction cannot stand because it was too "confusing," we discern no merit in this argument.  Although the existence of the dual regulatory schemes may render the instructions somewhat complicated, we do not view them as confusing.  In any event, the instructions accurately reflected the statutory framework, so to the extent that they could be said to be "confusing," such confusion is inherent in that framework, not something that the judge could have avoided.  Contrast Curtin v. Wiggins, 36 Mass. App. Ct. 933, 934-935 (1994) (setting aside a verdict where the instructions regarding the parties' respective responsibility for an accident were unnecessarily confusing).