Commonwealth vs. Robert T. Vickey.

Middlesex.    September 8, 1980. — November 17, 1980.

Present: Hennessey, C.J., Braucher, Wilkins, Liacos, & Abrams, JJ.

*Criminal Records.  Pardon.*

The modification of G. L. c. 6, § 171, by St. 1977, c. 691, § 3, subsequent
    to the enactment of c. 276, §§ 100A and 100C, providing for the seal-
    ing of certain criminal records, did not impliedly repeal or affect the·
    application of those sections.  [765-766]
General Laws c. 6, § 171, does not recognize a judicial power, as a matter
    of the court's inherent or ancillary powers, to compel the sealing of the
    record of an adult felony conviction which could not be sealed pur-
    suant to G. L. c. 276, §§ 100A or 100C.  [766-767]
An executive grant of a pardon is not the equivalent of the disposition
    described in G. L. c. 276, §§ 100A, 100C; and, in the circumstances,
    such a pardon did not require a court to exercise its authority, as a
    matter of its inherent or ancillary powers, to compel the sealing of the
    record of an adult felony conviction which could not be sealed under
    the provisions of either § 100A or § 100C.  [768-772]

Indictment found and returned in the Superior Court on
May 9, 1972.

A motion for an order to compel the Commissioner of
Probation to seal certain criminal records was heard by
*Garrity*, J.

After review was sought in the Appeals Court, the
Supreme Judicial Court, on its own initiative, ordered
direct appellate review.

*Natasha C. Lisman* for the defendant.

*Linda-Marie Irvin*, Assistant Attorney General, for the
Commissioner of Probation.

*John J. Droney*, District Attorney, & *Susan C. Mormino*,
Assistant District Attorney, for the District Attorney for the
Northern District, amicus curiae, submitted a brief.

LIACOS, J. In May, 1978, Robert T. Vickey (defendant) successfully sought, pro se, to have a Superior Court judge order the sealing of his record of conviction. The office of the Commissioner of Probation (Commissioner) refused to comply. On July 19, 1979, Vickey filed a motion seeking an order to compel the Commissioner to seal his record. On September 24, 1979, the same judge vacated his order of May, 1978, and denied Vickey's motion. Vickey appealed. We transferred the appeal from the Appeals Court on our own motion and now affirm.

The facts may be summarized as follows. On December 1, 1972, Vickey pleaded guilty to a charge of making a false bomb report, in violation of G. L. c. 269, § 14. At the time of this plea Vickey was twenty-three years old and without any prior criminal record. He received a suspended two-year sentence to a house of correction. On May 16, 1974, some seven months short of the two-year probation term, a Superior Court judge terminated and dismissed Vickey's probation. On May 10, 1978, the Governor, with the advice and consent of the Council, granted Vickey a full pardon. G. L. c. 127, § 152.

The motion judge ruled that Vickey's record could not be sealed pursuant to the provisions of G. L. c. 276, §§ 100A, 100C.[1] The judge ruled further that a pardon is not anal-

---

[1] General Laws c. 276, § 100A, as amended through St. 1975, c. 278, states in relevant part: "Any person having a record of criminal court appearances and dispositions in the commonwealth on file with the office of the commissioner of probation may, on a form furnished by the commissioner and signed under the penalties of perjury, request that the commissioner seal such file. The commissioner shall comply with such request provided . . . (2) that said person's court appearance and court disposition records, including termination of court supervision, probation or sentence for any felony occurred not less than fifteen years prior to said request . . . ."

General Laws c. 276, § 100C, inserted by St. 1973, c. 322, § 1, states in relevant part: "In any criminal case wherein the defendant has been found not guilty . . . or a no bill has been returned by the grand jury, or a finding of no probable cause has been made by the court, the defendant may . . . request that the commissioner seal said court appearance and

ogous to a dismissal and that the case did not require the exercise of ancillary or inherent jurisdiction. We agree.

The defendant concedes that his request does not come within the provisions of G. L. c. 276, §§ 100A and 100C, but argues that G. L. c. 6, § 171,[2] recognizes a judicial power to order sealing or purging without preemption by the provisions for sealing in G. L. c. 276, §§ 100A and 100C. He contends further that this case presents the same policy considerations which underlay our balancing of the competing interests in *Police Comm'r of Boston* v. *Municipal Court of the Dorchester Dist.*, 374 Mass. 640 (1978). We find the defendant's reading of the pertinent statutes, as well as his analogy to *Police Comm'r*, inapposite.

To the extent that the defendant relies on G. L. c. 6, § 171, we note it refers only to the "purging" of certain records. We treat the term "purging" as synonymous with "expungement." As noted in *Police Comm'r*, expungement is the total removal of a record "so that no trace of the information remains." *Id.* at 648. Sealing, the relief sought here, "refers to those steps taken to segregate certain records from the generality of records and to ensure their confidentiality to the extent specified in the controlling stat-

---

disposition recorded in his files. . . .

"In any criminal case wherein a nolle prosequi has been entered, or a dismissal has been entered by the court, except in cases in which an order of probation has been terminated, and it appears to the court that substantial justice would best be served, the court shall direct the clerk to seal the records of the proceedings in his files. The clerk shall forthwith notify the commissioner . . . who shall likewise seal the records of the proceedings in their files."

[2] General Laws c. 6, § 171, as amended by St. 1977, c. 691, § 3, reads in pertinent part: "The board shall promulgate regulations (a) creating a continuing program of data auditing and verification to assure the accuracy and completeness of criminal offender record information; (b) assuring the prompt and complete purging of criminal record information, insofar as such purging is required by any statute or administrative regulation, by *the order of any court of competent jurisdiction*, or to correct any errors shown to exist in such information; and (c) assuring the security of criminal offender record information from unauthorized disclosures at all levels of operation" (emphasis supplied).

ute." *Id.* Despite considerable confusion in applying this terminology,[3] the Massachusetts Legislature made clear its knowledge of the distinctions involved by changing the language of G. L. c. 94C, § 44, from "expungement" to "sealing." St. 1973, c. 533, § 1. The principal benefit which accrues to an ex-offender whose record is sealed is that he may state on employment applications that he has no record of arrest or conviction, and the Commissioner must corroborate this statement. G. L. c. 276, § 100A. Sealed records may nevertheless be made available to "any law enforcement agency, any court, or any appointing authority." G. L. c. 276, § 100A, as amended through St. 1975, c. 278. We noted also in *Police Comm'r* that specific legislative authorization for sealing extends only to court and probation records, but that G. L. c. 6, §§ 167-178, extends the confidentiality protection to all criminal records. See 374 Mass. at 650, 653.

We consider first the defendant's argument that the modification of G. L. c. 6, § 171, subsequent to the enactment of G. L. c. 276, §§ 100A and 100C, impliedly repealed those sections. In 1977 the Legislature added a third paragraph to G. L. c. 6, § 171. St. 1977, c. 691, § 3. Its failure at that time to modify the already existing statutory provision in § 171 (*b*) regarding purging "by the order of any court of competent jurisdiction," cannot be interpreted, as Vickey suggests, to repeal or affect the application of the sealing statutes. We cannot read such an intent from the mere fact of legislative silence. More importantly, our perusal of the language of G. L. c. 276, §§ 100A and 100C, in juxtaposition with G. L. c. 6, § 171, shows no contradiction or repugnance. The three sections are easily harmonized as serving the legislative purpose to protect individuals from unnecessary and overbroad dissemination of criminal record information. See *Commonwealth* v. *Hayes*, 372

---

[3] See Gough, The Expungement of Adjudication Records of Juvenile and Adult Offenders: A Problem of Status, 1966 Wash. U.L.Q. 147, 149 (legislation treating access to criminal record suffers "extreme lack of uniform terminology").

Mass. 505, 510-512 (1977); *Board of Educ.* v. *Assessors of Worcester*, 368 Mass. 511, 514 (1975); 2A C. Sands, Sutherland Statutory Construction § 51.01 (4th ed. 1973).

We turn now to the defendant's claim that the judge had the power to compel the sealing of the defendant's records under the court's inherent or ancillary powers, as described in *Police Comm'r of Boston* v. *Municipal Court of the Dorchester Dist.*, 374 Mass. 640 (1978). In *Police Comm'r, supra* at 650-651, we construed G. L. c. 6, § 171, to give broad recognition to the authority of the courts to act to the full extent of their previously existing jurisdiction. We also acknowledged in *Police Comm'r* that the court's treatment of criminal records may be defined by statute, *id.* at 650, and that the court might act in the absence of a clear statutory definition. *Id.* In *Police Comm'r*, a juvenile sought expungement of police records pertaining to a delinquency proceeding which had been dismissed with prejudice. Although G. L. c. 276, § 100B, delineates sealing procedures regarding juvenile records, we found no explicit statutory right to expungement or to protection of juvenile records outside the court or probation department. Cf. G. L. c. 6, §§ 167, 171. The juvenile in *Police Comm'r* could not base his claim on any specific statutory provisions, nor did the judge of the Juvenile Court rely on any such provisions.

By contrast, Vickey seeks the sealing of his conviction record despite an applicable and statutorily prescribed waiting period. The defendant acknowledges that he is ineligible for sealing under any statutory provision but urges this court to read into G. L. c. 6, § 171, a judicial power to bypass the plain language of G. L. c. 276, § 100A. The defendant errs in his intimation that the court in *Police Comm'r* found judicial power under § 171. We stated that § 171 does not grant the power to issue orders to purge, or to seal. General Laws c. 6, § 171, is "not to be read as a grant of power to issue such [purging] orders, but as recognition of the authority of courts to act to the full extent of their previously existing jurisdiction." 374 Mass. at 650-651. This general language does not undercut the specific language of the sealing statutes.

Here the meaning of G. L. c. 276, §§ 100A and 100C, is plain on its face. The types of dispositions for subsequent offenses which do not abridge the right to sealing of a prior record are set forth with particularity in § 100A: not guilty, dismissed for want of prosecution, dismissed at request of complainant, nol-prossed, no bill. Section 100C specifies the types of dispositions for which a court may direct immediate sealing of records: nolle prosequi, dismissal. The defendant apparently contends that the omission of the term "pardon" from these sections creates a statutory gap similar to the one we saw in *Police Comm'r.* This suggestion would require our stretching the statutory words beyond their fair meaning. See *Holbrook* v. *Randolph,* 374 Mass. 437, 440-441 (1978). Because the dispositions enumerated are premised on a presumption of innocence, it would take a strong demonstration of a legislative purpose not to limit the availability of sealing to the named dispositions in order to overcome the plain text of the statute. See *County Comm'rs of Norfolk County* v. *Board of Norfolk County Retirement Sys.,* 377 Mass. 696, 701 (1979). Moreover, a basic tenet of statutory construction is to give the words their plain meaning in light of the aim of the Legislature, and when the statute appears not to provide for an eventuality, there is no justification for judicial legislation. *Prudential Ins. Co.* v. *Boston,* 369 Mass. 542, 546-547 (1976). Furthermore, the difference outlined in the next part of our opinion, between a pardon and the dispositions named by statute, leads us to conclude that the omission of pardon is not fortuitous.

Because there was a conviction in his case, Vickey seems to suggest a quid pro quo: dismissal in *Police Comm'r* yielded expungement; therefore, the pardon in his case should result in immediate sealing. In making this argument Vickey overlooks the significant distinction between a finding of not guilty or a dismissal of charges, or other similar disposition, and a pardon. We turn now to an examination of the various meanings which may attach to an executive grant of a pardon.

a. *The history of pardons.* The law of pardons has been somewhat obfuscated by the failure to differentiate a pardon for innocence from a pardon for other reasons. See Weihofen, Pardon: An Extraordinary Remedy, 12 Rocky Mtn. L. Rev. 112 (1940). Professor Weihofen points out that pardons have issued for such highminded purposes as correcting erroneous convictions or maintaining political harmony, and for the merely practical purposes of relieving overcrowded prison conditions, rewarding a prisoner's reform or his turning State's evidence, celebrating a holiday, or doing a political favor. *Id.* at 113. Among these various possibilities, the pardon invoked to correct the wrongful conviction of innocent persons is an anomaly which has occurred only rarely. See *id.* at 112; Belli, The Story of Pardons, 80 Case & Com. 26, 26-30 (May-June, 1975); Williston, Does a Pardon Blot out Guilt?, 28 Harv. L. Rev. 647, 648-650 (1915); S. Stafford, Clemency: Legal Authority, Procedure, and Structure xiv, xvi (1977).

From its roots as mitigation for the rigid and harsh early English criminal law, the pardon has today become primarily a tool for rehabilitation of convicts and has been inextricably interwoven with the parole system. See Weihofen, *supra* at 114-115. In Massachusetts the pardoning power is defined in Part II, c. 2, § 1, art. 8, of the Massachusetts Constitution, as amended by art. 73 of the Amendments, and the Legislature has set forth the terms and conditions under which a prisoner or convict may apply for a pardon in G. L. c. 127, §§ 152-157.

Vickey's pardon was one of eighty-four similar pardons issued in 1978 by the Governor upon the recommendation of the Advisory Board of Pardons. 1979 Senate Doc. No. 2030, at 70. Not in any sense an extraordinary remedy arising out of unusual circumstances, Vickey's pardon resulted from the regular functioning of the penal and rehabilitative process.

The pardoning power has belonged throughout history to the executive branch. It functions in total independence of the judiciary. See *People* v. *Herrera*, 183 Colo. 155, 162

(1973); S. Stafford, *supra* at xiv; Belli, *supra* at 27-31; Lattin, The Pardoning Power in Massachusetts, 11 B.U.L. Rev. 505, 505-509 (1931). In many instances the pardoning power has operated as a check on the decisions of the judiciary or of correctional agencies.[4] There is no showing in the record that Vickey's pardon represents an instance of an executive correction of a deficiency in the process of justice or of a strong moral or political need for executive action.

b. *Qualitative difference between a pardoned conviction and a dismissal.* In *Commissioner of the Metropolitan Dist. Comm'n* v. *Director of Civil Serv.*, 348 Mass. 184, 194 (1964), this court stated: "[E]ven if a pardon may remit all penal consequences of a criminal conviction, it cannot obliterate the acts which constituted the crime." This is at the heart of the distinction, which the judge made on reconsideration of his original order, between a dismissal and a pardon. It should be noted that we pointed out in *Police Com'r, supra* at 662, that as the disposition moves away from a finding of noninvolvement, "the need for the remedy [of sealing or expungement], . . . becomes correspondingly less." See also *Tatum* v. *United States*, 310 F.2d 854, 856 (D.C. Cir. 1962) (conviction which may be set aside under Youth Corrections Act markedly different from criminal conviction which can be relieved only by pardon).

In a situation not unlike the one presently before us, the Supreme Court of Illinois made a careful distinction as to when expungement might be in order. In *People* v. *Glisson*, 69 Ill. 2d 502 (1978), the court approved a lower court order directing the return of photographs, fingerprints, and identification materials taken at seven arrests from which the claimant had been released without charge. The court

---

[4] For discussion of the contemporary relevance of this aspect of the pardoning power, see Belli, The Story of Pardons, 80 Case & Com. 26, 26-27 (May-June, 1975) (technical application of law may produce unjust or unpopular results in courts); S. Stafford, Clemency: Legal Authority, Procedure, and Structure xv, xvi (1977) (clemency may mitigate harshness of determinate sentencing statutes or of death penalty).

however refused expunction of the records of those arrests and refused to allow return of identification materials from a 1942 arrest which had led to conviction and ultimately to a pardon. *Id.* at 505. The court stated that the Legislature had not authorized expunction as part of the "rights and benefits to the pardonee." *Id.* at 506. Because the expunction statute applied by its terms to persons acquitted or released without conviction, the Illinois court concluded that a pardoned felon was "beyond the statute's reach." *Id.*[5] The Massachusetts Attorney General took this same approach in 1942. Rep. A.G., Pub. Doc. No. 12, at 60-61 (1942). A pardon "does not close the judicial eye." *Hozer v. State*, 95 N.J. Super 196, 202 (1967), quoting from *In re Lavine*, 2 Cal.2d 324, 329 (1935). Even after a pardon the fact of the commission of the offense remains.

The truism that a pardon does not wipe out guilt has consequences for law enforcement and other public informational needs, which this court discussed at length in *Commissioner of the Metropolitan Dist. Comm'n v. Director of Civil Serv.*, 348 Mass. 184, 195-196 (1964). The law since the *Metropolitan Dist. Comm'n* case has continued to support the State's interest in making available the facts of both the conviction and the pardon. See *Grossgold v. Supreme Court*, 557 F.2d 122, 125 (7th Cir. 1977) ("presidential pardon did not wipe out the moral turpitude inherent in the factual predicate supporting plaintiff's mail fraud conviction"); *Bjerkan v. United States*, 529 F.2d 125, 128 & n.2 (7th Cir. 1975) (though State may not work a punishment on an individual on account of a pardoned offense, it may consider the fact of the commission of the crime). See also *Thrall v. Wolfe*, 503 F.2d 313, 318 (7th Cir. 1974), cert. denied, 420 U.S. 972 (1975); *United States ex rel. Cannon v. Maroney*, 373 F.2d 908, 910 (3d Cir. 1967) (evidence of pardoned conviction may be introduced to fix sentence for sub-

---

[5] The court in *People v. Glissen*, 69 Ill. 2d 502 (1978), addressed only the question of expunction or return of records. It is not clear from the court's discussion whether Illinois statutes would permit sealing, as we understand it in Massachusetts.

sequent offense); *United States* v. *Castellana*, 433 F.Supp. 1309, 1317 (M.D. Fla. 1977) (pardon did not exempt defendant from Federal law restricting prior felons' possession of firearms); *Stone* v. *Oklahoma Real Estate Comm'n*, 369 P.2d 642, 646 (Okla. 1962) (pardon which does not remove stigma cannot authorize issuance of license conditioned on honesty). With regard to the use of a pardoned conviction to impeach, Rule 609(c) of the Federal Rules of Evidence places the burden on the witness to show that his pardon denotes rehabilitation, if not total innocence. See *United States* v. *Wiggins*, 566 F.2d 944, 946 (5th Cir.), cert. denied, 436 U.S. 950 (1978); *United States* v. *DiNapoli*, 557 F.2d 962, 966 (2d Cir.), cert. denied, 434 U.S. 858 (1977); *Gurleski* v. *United States*, 405 F.2d 253, 266 (5th Cir. 1968), cert. denied, 395 U.S. 981 (1969). Cf. *United States* v. *Thorne*, 547 F.2d 56, 59 (8th Cir. 1976) (court required no documentation of rehabilitation after evaluating education and employment record of witness). See generally 3 J. Weinstein & M. Berger, Evidence par. 609 [04], at 609-81, 609-84 (1978 & Supp. 1979). Cf. Proposed Mass. R. Evid. 609 (d) (both the fact of conviction and of pardon are admissible in regard to impeachment); W.B. Leach & P.J. Liacos, Massachusetts Evidence 124 (4th ed. 1967).

In light of these authorities illustrating the meaning of a pardon, we cannot conclude, as the defendant argues, that a pardon is the equivalent of the dispositions described in G. L. c. 276, §§ 100A, 100C, or the dismissal with prejudice involved in *Police Comm'r*. The pardoning statute itself confirms our view. It extends clemency on the one hand, G. L. c. 127, § 154, but provides for re-arrest if necessary, G. L. c. 127, § 155. Reading G. L. c. 276, § 100A, in conjunction with G. L. c. 127, §§ 154 and 155, we find that in issuing a pardon the executive branch may make a public statement of confidence in the pardonee's prospects for reform, but the sealing statute requires an actual time-proven demonstration of that reform.

The recordkeeping provisions of G. L. c. 6, the pardoning statutes, and the sealing statutes bespeak a uniform legisla-

tive and executive policy — to protect the privacy interests of the ex-felon and to maximize his restoration to normal citizenship. Unlike the situation of the juvenile in *Police Comm'r*, this appeal does not present an instance of legislative silence. Rather, the statutory scheme of parole and pardon, as well as the legislative definition of rehabilitation which entitles a convicted person to have his record sealed, are spelled out by the Legislature in terms which require no judicial enlargement.

We affirm the denial of the defendant's motion to compel the Commissioner to seal his record.

*So ordered.*