RONALD TABROFF *vs.* CONTRIBUTORY RETIREMENT APPEAL
BOARD & another.[1]

No. 06-P-678.

Essex. December 11, 2006. - May 23, 2007.

Present: DUFFLY, TRAINOR, & VUONO, JJ.

*Contributory Retirement Appeal Board. Municipal Corporation,* Retirement
board. *Public Employee,* Retirement benefits.

A Superior Court judge, in reversing an employee retirement classification
decision by the Contributory Retirement Appeal Board, correctly concluded
that the plaintiff was entitled to be classified as a Group 4 employee pursu-
ant to G. L. c. 32, § 3(2)(*g*), where the plaintiff's duties, as stated in his
job description, included the supervision of Group 4 employees, and the
fact that this supervision would occur during nonbusiness hours or during
emergency situations was irrelevant. [133-136]

CIVIL ACTION commenced in the Superior Court Department on
December 16, 2004.

The case was heard by *David A. Lowy,* J., on a motion for
judgment on the pleadings.

*Lawrence J. O'Keefe* for the defendants.

*William J. Lundregan, III,* for the plaintiff.

TRAINOR, J. The retirement board of Peabody (board) appeals
from a judgment entered in the Superior Court in favor of
Ronald Tabroff. A judge of the Superior Court reversed an
employee retirement classification decision by the Contributory
Retirement Appeal Board (CRAB), which had determined that
Tabroff was properly classified as a Group 1 rather than a Group
4 employee, pursuant to G. L. c. 32, § 3(2)(*g*). We agree that
Tabroff should be classified in Group 4 and, therefore, affirm
the judgment of the Superior Court.

*Background.* On March 14, 2002, Tabroff formally requested

---

[1]Retirement board of Peabody.

the board to change his classification from Group 1 to Group 4 pursuant to G. L. c. 32, § 3(2)(g), for purposes of retirement benefits. Group 4 includes in this context "employees of a municipal gas or electric generating or distribution plant who are employed as linemen, electrical switchboard operators, . . . and supervisors of said employees who shall include managers and assistant managers." G. L. c. 32, § 3(2)(g), as amended, St. 1993, c. 139. After reviewing his "job description, job title, the Electric Light organizational chart," and governing statute, the board determined that Tabroff was properly classified as Group 1. Tabroff appealed this decision to the division of administrative law appeals (DALA).

An administrative magistrate of DALA made extensive findings of fact regarding Tabroff's job description and the Peabody Municipal Light Plant (PMLP) organizational responsibilities, as well as conclusions of law, which were then adopted, without modification, by the Contributory Retirement Appeal Board (CRAB). The facts are not in dispute, and they may be summarized as follows. Since January, 1982, Tabroff has been employed at the PMLP, and, since June, 1988, he has held the position of Supervising Electrical Engineer. The pertinent portion of his job description states that his job falls "[u]nder general supervision of the Manager and Assistant Manager; responsible for planning, organizing, providing direction, control, and supervision of the Power Resource Management Division. . . . Operate high voltage circuit breakers and switches as required. Serve on call twenty four (24) hours a day to address emergency electrical or environmental situations or serious malfunctions of substations, distribution, and transmission systems, including the supervision of Linem[e]n (Troublemen), Power Plant Equipment Maintenancemen and Electric Meter Installers." The official organizational chart of the PMLP shows that Tabroff has direct supervisory responsibilities over a "co-op student engineer" and five dispatchers, all of whom are Group 1 employees for the purposes of G. L. c. 32, § 3(2)(g). The direct supervisors of linemen (troublemen) during normal business hours are the PMLP Manager, the PMLP Assistant Manager, and the Supervisor of Electrical Distribution.

The organizational chart, however, does not represent the du-

ties contained in Tabroff's job description. The organizational chart appears to represent supervisory responsibilities only during regular business hours and nonemergency situations. Despite this organizational chart, Tabroff's job description required him to directly supervise linemen (troublemen) during nonbusiness hours and emergency situations. As the administrative magistrate found, the exercise of these on-call supervisory responsibilities have occurred "[o]n many occasions over the last twenty (20) years."

The administrative magistrate concluded that the board was correct in classifying Tabroff as a Group 1 employee, having determined that "neither [Tabroff's] title nor job description include the supervision of linemen/troublemen as part of his regular duties. Thus, although he may supervise Group 4 employees in emergency situations, he is not 'employed as' a supervisor of the type of personnel enumerated in Group 4." CRAB adopted and affirmed the decision of the administrative magistrate.

Tabroff filed a complaint in Superior Court, pursuant to G. L. c. 30A, § 14, appealing and seeking to vacate CRAB's decision, and requesting that his classification be changed from Group 1 to Group 4. In granting Tabroff's motion for judgment on the pleadings, the judge reclassified Tabroff as a Group 4 employee. Relying on G. L. c. 30A, § 14(7)(c), the judge determined that CRAB's decision was erroneous as matter of law. Distinguishing the case from *Gaw* v. *Contributory Retirement Appeal Bd.*, 4 Mass. App. Ct. 250 (1976), the judge reasoned that Tabroff's job description specifically states that he supervises Group 4 linemen/troublemen and that "[i]t makes no difference whether this supervision occurs during the normal business hours" or in emergency situations during nonbusiness hours. We affirm.

*Discussion.* Massachusetts courts give great deference to decisions of administrative agencies. See *Dowling* v. *Registrar of Motor Vehicles*, 425 Mass. 523, 525 (1997); *Flemings* v. *Contributory Retirement Appeal Bd.*, 431 Mass. 374, 375 (2000); *Lisbon* v. *Contributory Retirement Appeal Bd.*, 41 Mass. App. Ct. 246, 257 (1996). An administrative agency's interpretation of a statute has long been relied on by Massachusetts courts

"because of the agency's experience, technical competence, and specialized knowledge." *Retirement Bd. of Taunton* v. *Contributory Retirement Appeal Bd.*, 56 Mass. App. Ct. 914, 915 (2002). See *Falmouth* v. *Civil Service Commn.*, 447 Mass. 814, 821 (2006), quoting from *Nuclear Metals, Inc.* v. *Low-Level Radioactive Waste Mgt. Bd.*, 421 Mass. 196, 211 (1995) ("[a] state administrative agency in Massachusetts has considerable leeway in interpreting a statute it is charged with enforcing"); G. L. c. 30A, § 14(7). We should not disturb an administrative agency's decision unless we determine "that the substantial rights of any party have been prejudiced" based on one of the reasons set forth in G. L. c. 30(A), § 14(7).[2] The deference normally accorded to an administrative agency's decision is no longer appropriate when that agency commits an error of law, G. L. c. 30A, § 14(7)(c), or its decision is unsupported by substantial evidence, G. L. c. 30A, § 14(7)(e).

Here, CRAB found that Tabroff's official job description included the requirement that he:

> "Serve on call twenty four (24) hours a day to address emergency or environmental situations or serious malfunctions of substations, distribution, and transmission systems, *including the supervision of Linem[e]n (Troublemen), Power Plan Equipment Maintenance and Electric Meter Installers*" (emphasis in original).

CRAB also found that (1) Tabroff was the only employee who had responsibility for all environmental matters concerning the PMLP; (2) he was required to exercise these responsibilities every hour of every day; and (3) "on many occasions over the last twenty (20) years, [Tabroff] has been required to

---

[2] Section 14(7) of G. L. c. 30A provides that an agency's decision can be set aside if it is determined to be:

"(a) In violation of constitutional provisions; or (b) In excess of the statutory authority or jurisdiction of the agency; or (c) Based upon an error of law; or (d) Made upon unlawful procedure; or (e) Unsupported by substantial evidence; or (f) Unwarranted by facts found by the court on the record as submitted or as amplified under paragraph (6) of this section, in those instances where the court is constitutionally required to make independent findings of fact; or (g) Arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law."

supervise line construction and substation maintenance personnel."

CRAB relied primarily on the *Gaw* decision in reaching its conclusion that Tabroff was not entitled to be reclassified as a Group 4 employee. In *Gaw*, the court held that inclusion in Group 4 would not "apply to employees who *serve* as linemen and the like or as their supervisors, but rather to 'employees' of such a plant 'who are *employed*' in those capacities (emphasis supplied). . . . The test for eligibility is largely the employee's title or job description." *Gaw* v. *Contributory Retirement Appeal Bd.*, 4 Mass. App. Ct. at 256, quoting from G. L. c. 32, § 3(2)(*g*). Gaw was a manager with at least one layer of supervisors between him and the linemen/troublemen. Although he occasionally supervised these Group 4 employees, he was not "employed as" a supervisor of them and this responsibility was not reflected in his job description. *Id.* at 252-253, 256. CRAB found that the facts of this case were similar to those of *Gaw* in all pertinent respects. CRAB also found that neither Tabroff's job title nor job description included supervision of linemen/troublemen as part of his "regular" duties and that his "regular" duty was to supervise Group 1 employees. "Thus, although he may supervise Group 4 employees in emergency situations, he is not 'employed as' a supervisor of the type of personnel enumerated in Group 4." This was error. CRAB found Tabroff's duties during "normal business hours" to be determinative for purposes of reclassification, concluding that his "regular dut[y]" was to supervise Group 1 employees. CRAB misunderstands what the court in *Gaw* meant when it determined that eligibility for Group 4 was based largely on "the employee's title or job description." *Id.* at 256. Unlike Tabroff, Gaw was not "employed as" a supervisor of the type of Group 4 personnel enumerated in G. L. c. 32, § 3(2)(*g*). While Gaw would occasionally supervise such personnel, such supervision was not part of his job description and not within the statutory meaning of "employed as." Furthermore, neither *Gaw* nor G. L. c. 32, § 3(2)(*g*), require or imply that the phrase "employed as" is limited to regular business hours. CRAB's conclusion in this case ignored the fact that Tabroff's job description required him to be "on call twenty four (24) hours a

day to address emergency electrical or environmental situations . . . including the supervision of Linem[e]n (Troublemen)," who are unquestionably Group 4 employees.

The fact that this supervision would occur during "nonbusiness hours" or during emergency situations is irrelevant. Simply stated, because Tabroff's job description indicates that he, at times when necessary, supervises Group 4 employees, he is entitled to Group 4 classification. Therefore, to the extent that CRAB's determination was a finding of fact, it was not supported by substantial evidence and cannot stand. To the extent that CRAB's determination was a ruling of law, it was incorrect.

*Judgment affirmed.*