ROBERT D. HERRICK *vs.* ESSEX REGIONAL RETIREMENT
BOARD & another.[1]

No. 09-P-1351.

Essex. April 13, 2010. - September 10, 2010.

Present: KANTROWITZ, McHUGH, & FECTEAU, JJ.

*Retirement. Municipal Corporations,* Retirement board. *Public Employment,*
Retirement benefits, Forfeiture of retirement benefits. *Administrative Law,*
Agency's interpretation of statute. *Statute,* Construction. *Words,* "Removal,"
"Discharge."

Discussion of the standard of review of an administrative agency's decision
involving interpretation of a statute. [647-648]
A Superior Court judge, in reversing a decision of the Contributory Retire-
ment Appeal Board denying the plaintiff employee's application for a
superannuation retirement allowance, correctly concluded that under G. L.
c. 32, § 10(1), the qualifying phrase "without moral turpitude" did not ap-
ply to the circumstances of the plaintiff's application, where that phrase
applied only to employees removed or discharged from employment
[648-652]; moreover, the judge correctly concluded that the plaintiff's
resignation, seen as occurring under the threat of removal, did not amount
to constructive removal within the meaning of the words "removed or
discharged" in the statute [652-653]; finally, the judge correctly concluded
that forfeiture of the plaintiff's pension was not required under G. L. c. 32,
§ 15(4), where there was no connection shown directly linking the plaintiff's
public position and the offense of which he was convicted [653-655].

CIVIL ACTION commenced in the Superior Court Department on
March 24, 2005.

The case was heard by *Maureen B. Hogan,* J., on motions for
judgment on the pleadings.

*Christopher T. Casey* for Essex Regional Retirement Board.

*H. Ernest Stone* for the plaintiff.

FECTEAU, J. The Essex Regional Retirement Board (ERRB)

---

[1]The Contributory Retirement Appeal Board is a nominal party; it has not
participated in this appeal. This matter has been the subject of a prior appeal.
See *Herrick* v. *Essex Regional Retirement Bd.,* 68 Mass. App. Ct. 187 (2007).

appeals from a Superior Court judgment that reversed the denial of Robert D. Herrick's application for a superannuation retirement. ERRB denied Herrick's application on the ground that he had forfeited his right to a pension due to "moral turpitude" as provided in G. L. c. 32, § 10(1).[2] A magistrate in the Division of Administrative Law Appeals (DALA) upheld that decision. The Contributory Retirement Appeal Board (CRAB) affirmed in a divided decision, the majority stating that "the behavior attendant to Herrick's resignation was moral turpitude," and finding that the phrase "without moral turpitude" could not have been intended by the Legislature to be confined to "removed or discharged" employees.[3] On cross motions for judgment on the pleadings, a Superior Court judge reversed on the ground that CRAB (and the other entities before it) had committed an error of law in their interpretation of c. 32, § 10(1). The judge also disagreed with the alternative ground argued by ERRB that Herrick's pension was forfeited by operation of G. L. c. 32, § 15(4). Notwithstanding that this contention was raised for the first time in Superior Court, the judge considered it, nonetheless, for the sake of completeness. Because we agree that the statute in question does not permit the forfeiture of Herrick's pension, the denial of his application for superannuation retirement benefits was error and must be reversed. Thus, we affirm the judgment.

*Background.* Briefly, at the time of his retirement, Herrick worked as a maintenance mechanic and custodian for the Wen-

[2]Section 10(1), as amended through St. 2000, c. 123, § 24A, provides: "Right to Superannuation Retirement Allowance. Any member . . . who after completing twenty or more years of creditable service, resigns or voluntarily terminates his service, or fails of nomination or re-election, or fails of reappointment, or whose office or position is abolished, or is *removed or discharged from his office or position without moral turpitude* on his part, or any member who, after having attained age fifty-five, resigns, or fails of nomination or re-election, or fails to become a candidate for nomination or re-election, or fails of reappointment or is *removed or discharged from his office or position without moral turpitude* on his part, or any such member whose office or position is abolished, shall, upon his written application on a prescribed form filed with the board, receive a superannuation retirement allowance . . . ." (Emphasis supplied.)

[3]Section 10(1) uses the term "member," which is defined as an employee included in one of the identified retirement systems. See G. L. c. 32, § 1. We shall use the terms "member" and "employee" interchangeably.

ham Housing Authority (Authority), and through that employment (and prior employment with the town of Hamilton) was a member of ERRB. On May 1, 2003, Herrick was charged with sexually assaulting his daughter.[4] That same day he resigned his position with the Authority and, on May 6, 2003, submitted an application for voluntary superannuation retirement pursuant to G. L. c. 32, § 5.[5] On May 15, 2003, he pleaded guilty to two counts of indecent assault and battery on a child and was sentenced to two and one-half years in jail, eighteen months of which to serve.

On June 27, 2003, ERRB denied Herrick's application for retirement benefits. Herrick appealed from that decision. A hearing was conducted by a DALA magistrate on July 1, 2004, resulting in a decision affirming ERRB's decision. Herrick then appealed from that decision to CRAB, which affirmed the denial of Herrick's pension application, in a two-to-one decision. Herrick then sought timely judicial review in Superior Court, where both parties filed motions for judgment on the pleadings.

*Discussion.* This case presents an issue of statutory construction. The standards of law applicable to the issue before us were recently summarized in *Tabroff* v. *Contributory Retirement Appeal Bd.*, 69 Mass. App. Ct. 131, 133-134 (2007), quoting from *Retirement Bd. of Taunton* v. *Contributory Retirement Appeal Bd.*, 56 Mass. App. Ct. 914, 915 (2002) (citation omitted): "Massachusetts courts give great deference to decisions of administrative agencies. An administrative agency's interpretation of a statute has long been relied on by Massachusetts courts 'because of the agency's experience, technical competence, and specialized knowledge.' " See *Nuclear Metals, Inc.* v. *Low-Level Radioactive Waste Mgmt. Bd.*, 421 Mass. 196, 211 (1995), quoting from Cella, Administrative Law & Practice § 747 (1986) ("A State administrative agency in Massachusetts has considerable leeway in interpreting a statute it is charged with enforcing"). While the court recognizes that reasonable interpretations of

---

[4]He was initially charged with rape of a child with force and indecent assault and battery on a child. The rape charge was later reduced to an additional count of indecent assault and battery. Whether such charges constitute offenses of moral turpitude is not at issue.

[5]There is no dispute that Herrick had more than twenty years of service and that he was over age fifty-five.

statutes by agencies are entitled to deference, "[a]n erroneous interpretation of a statute by an administrative agency is not entitled to deference." *Woods* v. *Executive Office of Communities & Dev.*, 411 Mass. 599, 606 (1992). "Deference is not abdication. It does not permit a detectable 'error of law' by the agency." *Anheuser-Busch, Inc.* v. *Alcoholic Bevs. Control Commn.*, 75 Mass. App. Ct. 203, 209 (2009), quoting from *Heineken U.S.A., Inc.* v. *Alcoholic Bevs. Control Commn.*, 62 Mass. App. Ct. 567, 572 (2004). "If an agency interpretation were to collide with the plain meaning of a statute, the agency view would have to give way." *Anheuser-Busch, supra* at 209.

"We should not disturb an administrative agency's decision unless we determine 'that the substantial rights of any party have been prejudiced' based on one of the reasons set forth in G. L. c. 30A, § 14(7). The deference normally accorded to an administrative agency's decision is no longer appropriate when that agency commits an error of law, G. L. c. 30A, § 14(7)(*c*), or its decision is unsupported by substantial evidence, G. L. c. 30A, § 14(7)(*e*)." *Tabroff, supra* at 134 (footnote omitted).

*G. L. c. 32, § 10(1).* We turn first to the scope of the statute's qualifying phrase "without moral turpitude." Herrick contends that it applies only to the situation where a member of a public retirement system is "removed or discharged." The basis on which ERRB denied Herrick's pension application, a determination with which CRAB agreed, is that the phrase "without moral turpitude" modifies all applications for retirement, including those submitted after a member resigns. In a comprehensive and well-reasoned decision, the Superior Court judge disagreed with this interpretation, applying general principles of statutory construction and grammatical rules; she concluded that the qualifier "without moral turpitude" applied only to those removed or discharged from employment, not to all other antecedent phrases in the statute.

As expressed in *Collatos* v. *Boston Retirement Bd.*, 396 Mass. 684, 686 (1986) (citations omitted), "[a] statute designed to enforce the law by punishing offenders, rather than simply by enforcing restitution to those damaged, is in the nature of a penal statute. Forfeiture of property . . . is punitive." "Penal statutes must be construed strictly 'and not extended by equity,

or by the probable or supposed intention of the legislature as derived from doubtful words; but that in order to charge a party with a penalty, he must be brought within its operation, as manifested by express words or necessary implication.' " *Id.* at 686-687, quoting from *Libby* v. *New York, N.H. & H.R.R.*, 273 Mass. 522, 525-526 (1930). "We examine the statute, therefore, particularly mindful that its words are not to be stretched to accomplish a result not expressed." *Collatos, supra* at 687.

"A fundamental tenet of statutory interpretation is that statutory language should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result." *Sullivan* v. *Brookline*, 435 Mass. 353, 360 (2001). Agency expertise or policy preference cannot alter the plain meaning of unambiguous statutory language. See especially *M.H. Gordon & Son, Inc.* v. *Alcoholic Bevs. Control Commn.*, 371 Mass. 584, 588-590 (1976) (courts cannot acquiesce in expedient enlargement of administrative authority or jurisdiction unsupported by statutory terms). See also *Commonwealth* v. *Vickey*, 381 Mass. 762, 767 (1980) ("a basic tenet of statutory construction is to give the words their plain meaning in light of the aim of the Legislature, and when the statute appears not to provide for an eventuality, there is no justification for judicial legislation"). "[W]hen the meaning of a statute is at issue, the initial inquiry focuses on the actual language of that statute. 'Where the language of a statute is clear and unambiguous, it is conclusive as to legislative intent.' " *Martha's Vineyard Land Bank Commn.* v. *Board of Assessors of W. Tisbury*, 62 Mass. App. Ct. 25, 27 (2004), quoting from *Pyle* v. *School Comm. of S. Hadley*, 423 Mass. 283, 285 (1996). "A statute is plain and unambiguous if 'virtually anyone competent to understand it, and desiring fairly and impartially to ascertain its signification, would attribute to the expression in its context a meaning such as the one we derive, rather than any other; and would consider any different meaning, by comparison, strained, or far-fetched, or unusual, or unlikely.' " *Martha's Vineyard, supra* at 28 n.4, quoting from *New England Med. Center, Inc.* v. *Commissioner of Rev.*, 381 Mass. 748, 750 (1980). "A fundamental and well-established principle of statutory interpretation 'is that a statute must be interpreted according to the intent of the Legislature ascertained

from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated.' " *Fleet Natl. Bank* v. *Commissioner of Rev.*, 448 Mass. 441, 448 (2007), quoting from *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934). See *Sullivan, supra.*

Turning, then, to the words of the statute, as the judge observed: "[t]he 'rule of the last antecedent' holds that, unless there is something in the subject matter, dominant purpose, or language of the statute that requires a different interpretation, 'qualifying phrases are to be applied to the words or phrase immediately preceding and are not to be construed as extending to others more remote.' *Russell* v. *Boston Wyman, Inc.*, 410 Mass. 1005, 1006-1007 (1991), quoting [from] *United States* v. *Ven-Fuel, Inc.*, 758 F.2d 741, 751 [(1st Cir. 1985)]. . . . 'It is the general rule of statutory as well as grammatical construction that a modifying clause is confined to the last antecedent unless there is something in the subject matter or dominant purpose which requires a different interpretation. . . . According to (this rule) of construction a proviso or an exception is also presumed to be confined to the last antecedent.' *Moulton* v. *Brookline Rent Control Bd.*, 385 Mass. 228, 230-231 (1982) (citations omitted)." Thus, since the antecedent phrases of the statute are separated from the qualifier by commas, the qualifier applies only to the immediate antecedent within the same phrase that was not separated from "without moral turpitude" by a comma.

The logic of her interpretation becomes apparent when the use of the phrase "without moral turpitude" is examined in connection with the two means, provided by § 10(1), under which a member may be qualified to retire: (1) "after completing twenty or more years of creditable service," and (2) "having attained age fifty-five." In relation to the former, the situation when a member's "office or position is abolished" is immediately antecedent to the phrase "without moral turpitude," but abolishment of position is clearly unrelated to moral turpitude. This conclusion is compelled when compared to the latter "age fifty-five" retirement, since the phrase "removed or discharged from his office or position without moral turpitude on his part," is followed by the phrase "or any such member whose office or

position is abolished," a situation that does not require that it be "without moral turpitude," as such condition is not included. See note 2, *supra*.

Similarly, the judge's interpretation that the phrase "without moral turpitude" relates only to "removed or discharged" is supported by her comparison of § 10(1) with § 10(2)($b^{1/2}$). As she points out, the latter section, which pertains to an application for retirement benefits from a member who resigns after ten years of service, does not contain the phrase "without moral turpitude." That "without moral turpitude" was intended to modify only "removed or discharged" is also evident from G. L. c. 32, § 10(2)(*a*), inserted by St. 2002, c. 184, § 46, which states that "[t]he retirement board shall require the employer of any employee applying for a termination retirement allowance to certify in writing, under the pains and penalties of perjury, that one of the following circumstances applies: (1) that the employee has failed of nomination or re-election, (2) that the employee has failed of reappointment, (3) that the employee's office or position has been abolished, or (4) that the employee has been removed or discharged from his position without moral turpitude on his part."[6]

The Superior Court judge's decision cited, and was consistent with, the only authority on point, two opinions from the Attorney General which recognized that retirement under the threat of removal is not the equivalent of removal or discharge under c. 32, § 10(1) or § 10(2). See Opinion of the Attorney General, Rep. A.G., Pub. Doc. No. 12, at 134-135 (1963); Opinion of the Attorney General, Rep. A.G., Pub. Doc. No. 12, at 172-174 (1977). Moreover, such an interpretation is consistent with a view supported by decisions of both the Supreme Judicial Court and this court, albeit in dicta. See *Massachusetts Bay Transp. Authy.* v. *Massachusetts Bay Transp. Authy. Retirement Bd.*, 397 Mass. 734, 739 (1986) ("there are laws of the Commonwealth which preclude the payment of retirement benefits to certain public employees who are discharged or convicted for misconduct in office. See G. L. c. 32, § 10[1] [1984 ed.]"); *Brown* v. *Taunton*, 16 Mass. App. Ct. 614, 619 n.6 (1983) ("[w]e note . . .

---

[6]Although § 10(2)(*a*) was amended by St. 2009, c. 21, § 12, that amendment, which, in effect, simply deleted the first condition, also supports our construction of § 10(1).

that the 'moral turpitude' provisions of G. L. c. 32, § 10(1), do not apply since the plaintiff was not 'removed or discharged from his office' ").

*Threatened removal.* ERRB contends additionally that Herrick's pension can be forfeited because his resignation, seen as occurring under threat of removal, amounts to constructive removal. Technically, this misapplies the concept of constructive discharge to the facts of this case since Herrick's motivation to leave his employ was not due to actions of the employer. *GTE Prod. Corp.* v. *Stewart,* 421 Mass. 22, 34-35 (1995). More broadly, however, ERRB seeks to extend the meaning of "removed or discharged" to be able to reach members who retire under a cloud, in the face of possible or likely removal or discharge for reasons of criminal prosecution for offenses of moral turpitude.

Addressing a similar question, the Attorney General opined "that the term 'removal or discharge' is not so broad that it sweeps within the ambit of G. L. c. 32, § 10(2)(c), a resignation arguably tendered to forestall removal. It is a basic maxim of statutory construction that the words of a statute are to be read in accordance with their common and approved usage and are not to be stretched beyond their fair meaning in order to rationalize a particular result. The words 'removal' and 'discharge' connote an affirmative act by one's employer and have a common usage significantly different from the word 'resignation,' which implies an act by the employee. Indeed the difference between the terms is apparent in the terms of G. L. c. 32, § 10, in which the words 'removal or discharge' and 'resigns' are repeatedly used to describe different situations. Since words used in different portions of a statute are ordinarily given the same meaning throughout, it would be an anomaly of statutory construction to extend the scope of G. L. c. 32, § 10(2)(c), to include resignations as well as removals, when they are made distinct by the immediately preceding language of § 10." Opinion of the Attorney General, Rep. A.G., Pub. Doc. No. 12, at 173-174 (1977) (citations omitted). The same rationale can be applied to § 10(1).

To hold otherwise, and to permit "removed or discharged" to be stretched to accommodate the kind of "constructive" removal suggested by ERRB, would permit it to inquire into, evaluate, and weigh reasons that motivated the retirement of a member.

Such an interpretation would invite decisions based not upon an identifiable record of proceedings that lead an employer to an objectively discernible removal of its employee, but instead upon subjective criteria that are prone to a range of ills that objective criteria are designed to prevent.

As suggested by the judge, ERRB's reliance on *DeLeire* v. *Contributory Retirement Appeal Bd.*, 34 Mass. App. Ct. 1 (1993), is misplaced. There, the member was suspended from his position and sentenced to prison prior to his attempted resignation. Accordingly, the position was considered vacant by operation of G. L. c. 279, § 30, and such "removal" or "discharge" was plainly with "moral turpitude." Here, however, Herrick, resigned and applied for retirement prior to his conviction. Moreover, significant to the holding in *DeLeire*, but distinguishable from the case at bar, was the operation of G. L. c. 268A, § 25, which precludes payment of retirement benefits to certain suspended employees, and the court's holding that the letter of resignation submitted in that case was not sufficient to end the employee's suspension.

*G. L. c. 32, § 15(4).* ERRB also argues that forfeiture of Herrick's pension is required pursuant to the provision of G. L. c. 32, § 15(4), which prohibits a member, "after final conviction of a criminal offense involving violation of the laws applicable to his office or position," from receiving a pension. Herrick contends that his conviction was for an offense that did not apply to his position. In consideration of the cases that have interpreted § 15(4), we decide that this subsection does not apply to the circumstances of the instant case.

Similar to c. 32, § 10(1), § 15(4) has been held as penal in nature, thus strictly construed. *Gaffney* v. *Contributory Retirement Appeal Bd.*, 423 Mass. 1, 3 n.3 (1996). In *Gaffney, supra* at 4-5, the court stated that "[t]he substantive touchstone intended by the General Court [when it enacted G. L. c. 32, § 15(4),] is criminal activity *connected with* the office or position. Yet it is also apparent that the General Court did not intend pension forfeiture to follow as a sequelae of any and all criminal convictions. Only those violations *related to* the member's official capacity were targeted. Looking to the facts of each case for a *direct link* between the criminal offense and the member's office

or position best effectuates the legislative intent of § 15(4)." (Emphasis supplied.) In *State Bd. of Retirement* v. *Bulger*, 446 Mass. 169, 180 (2006), quoting from *Gaffney, supra* at 4, the court further described its decision in *Gaffney* as not limiting the application of § 15(4) to violations of " 'highly specialized crimes addressing official actions' or even criminal conduct committed 'in the course of [official] duties,' but encompass[ing] 'criminal activity connected with the office or position.' "

ERRB contends that Herrick's sexual assault convictions are directly linked to his job as a custodian for the housing project because he had access to keys to the individual units. While the offenses in question are ones of moral turpitude,[7] the record does not show that the offenses were connected with Herrick's official capacity, nor does there appear to be the type of direct link intended by the Legislature, especially since the statute is construed narrowly because of its penal nature. *Gaffney, supra* at 3 n.3. Unlike the facts in *Gaffney*, or those in *Maher* v. *Justices of the Quincy Div. of the Dist. Ct. Dept.*, 67 Mass. App. Ct. 612, 616-617 (2006) (forfeiture under § 15[4] upheld when a city inspector was convicted of breaking and entering into city hall and stealing from his personnel file), *S.C.*, 452 Mass. 517 (2008), a case relied upon by ERRB, the facts here do not present a connection or direct link to Herrick's official position; without intending to minimize the offense, we observe that it was not committed upon anyone who was employed by or who resided at the public property, nor did it occur there. This lack of connection to Herrick's position is significant, notwithstanding the recognition in *Gaffney, supra* at 3, that G. L. c. 32, § 15(4), was enacted "for an intermediate level of pension forfeiture in a broader array of circumstances" in reaction to the decision by the Supreme Judicial Court in *Collatos*, 396 Mass. at 687-688. In *Collatos, supra*, the Supreme Judicial Court construed G. L. c. 32, § 15(3A), to be limited by its plain terms to pension forfeiture for conviction of offenses under the listed State statutes, and not to reach a Federal cognate conviction.[8] Nonetheless, a direct link between the public position and the offense for which

---

[7]See note 4, *supra.*

[8]The forfeiture of a pension on the ground of moral turpitude may be avoided by an immediate resignation and pension application before the

the member is convicted must be shown, a connection which has not been shown here.

*Conclusion.* The pension forfeiture statute at issue is a penal provision that must be strictly construed, and when construed as such, it does not support ERRB's interpretation of the statute or permit the denial of Herrick's application for superannuation retirement benefits. Therefore, the denial of the application was erroneous. We must affirm the judgment.

*So ordered.*

---

employer has had an opportunity to remove or discharge the employee. We cannot presume that the statutory language was an inadvertent oversight by the Legislature, nor may we provide a gloss to the statute that prevents this outcome from reoccurring. We agree with the observations by the judge below, and by two Attorneys General, that if such an outcome was not intended, its remedy lies with the Legislature. See *Vickey*, 381 Mass. at 767 ("when the statute appears not to provide for an eventuality, there is no justification for judicial legislation").