WILLIAM HUNTER, SR. vs. CONTRIBUTORY RETIREMENT
APPEAL BOARD & another.[1]

No. 10-P-359.

Essex. November 2, 2010. - August 29, 2011.

Present: RAPOZA, C.J., TRAINOR, & WOLOHOJIAN, JJ.

*Retirement. Public Employment,* Retirement. *Police,* Retirement. *Correction
Officer. Contributory Retirement Appeal Board. County,* Retirement board.

Discussion of the standard of review applicable to decisions of the Contribu-
tory Retirement Appeal Board. [259-260]
The Contributory Retirement Appeal Board (board) did not err in determining
that the State Board of Retirement had correctly classified the plaintiff, an
employee of a county sheriff's department who performed duties of a cor-
rection officer but did not have that job title, as a Group 2 employee for
retirement purposes rather than a Group 4 employee, where G. L. c. 32,
§ 3(2)(g), classifies in Group 2 employees, other than correction officers,
whose regular and major duties require them to have the care, custody,
instruction, or other supervision of prisoners [260-263]; further, the fact
that a county retirement board had previously classified the plaintiff in
Group 4 did not prohibit the State Board of Retirement from later chang-
ing his classification [263].

CIVIL ACTION commenced in the Superior Court Department on
October 23, 2008.

The case was heard by *Nancy S. Holtz*, J., on a motion for
judgment on the pleadings.

*William J. Lundregan, III*, for the plaintiff.

*Erin C. Nally* for State Board of Retirement.

RAPOZA, C.J. The plaintiff, William Hunter, Sr., appeals from
a judgment entered in the Superior Court in favor of the Con-
tributory Retirement Appeal Board (CRAB), which determined
that Hunter was correctly classified for retirement purposes
pursuant to G. L. c. 32, § 3(2)(g), as a Group 2 employee. On

[1]State Board of Retirement.

appeal, Hunter argues that CRAB should have classified him in Group 4 because he regularly performed duties of a correction officer and the term "correction officer[]" is explicitly included in the statute relating to Group 4 membership. He also argues that because the Essex County retirement board (county board) at one point classified him in Group 4, the State Board of Retirement (State board) was precluded by G. L. c. 34B, § 14(*a*), from reclassifying him in Group 2. For the reasons discussed below, we discern no error and affirm.

*Facts.* On September 30, 2003, Hunter, an employee of the Essex County sheriff's department (department), retired under the department's early retirement incentive program. The State board classified him, based on his position as "Maintenance Personnel," in Group 2 for retirement purposes. He retired without appealing the State board's decision even though the county board had previously classified him, prior to the State takeover of the Essex County retirement system, as being in Group 4. Not until December 26, 2006, did Hunter write to the State board to request a change in his classification to Group 4. The State board determined that Hunter was correctly classified in Group 2 based on its interpretation of G. L. c. 32, § 3(2)(*g*), and Hunter appealed to the Division of Administrative Law Appeals (DALA). After a hearing, an administrative magistrate for DALA concluded that Hunter was properly classified in Group 2.

The administrative magistrate found the following facts, all of which CRAB subsequently incorporated by reference into its decision. Hunter joined the Essex County retirement system in 1996, and at that time listed his title as "janitor." On May 9, 1997, he requested that the county board reclassify him from Group 2 to Group 4 on the grounds that his duties involved working with and supervising inmates. The department supported Hunter's request, stating that "[s]ince part of his duty is supervising inmates . . . we feel that he should be reclassified to Group 4." The county board granted the request.

In 1999, Essex County government was abolished and its employees, including Hunter, were transferred to the State retirement system. On August 14, 2003, on a group classification questionnaire, Hunter listed his job title and employing agency as "Tool Room Attendant/Janitor/Essex County Sheriff's Department." Thereafter, the State board classified him in Group 2.

Hunter's job description included a provision stating that he "[m]ust be able to supervise and direct inmates." The first responsibility in his job description was to "[d]irectly supervise inmates on a shift, assuring that they complete their assignments and provide [un]interrupted services for the facility." The administrative magistrate for DALA also found "[t]he petitioner wore a uniform to work every day and he was given a number of keys with which to navigate his way about the facility and lead inmates to job assignments. He also took inmates outside of the facility to maintain the grounds."

The administrative magistrate concluded, based on *Gaw* v. *Contributory Retirement Appeal Bd.*, 4 Mass. App. Ct. 250, 254 (1976), that Hunter did not qualify for Group 4 because his position as "Tool Room Attendant" does not appear among the job titles listed in Group 4. Rather, according to the administrative magistrate, Hunter was correctly classified in Group 2 under the category of employees "whose regular and major duties require them to have the care, custody, instruction or other supervision of prisoners."

Hunter subsequently appealed to CRAB, which affirmed the decision of the administrative magistrate "for the reasons stated in the DALA magistrate's [c]onclusion." Pursuant to G. L. c. 30A, § 14, Hunter appealed to the Superior Court, which affirmed the decision of CRAB.

*Discussion.* 1. *Standard of review.* Judicial review under G. L. c. 30A, § 14, is limited to determining whether the agency's decision was unsupported by substantial evidence, arbitrary and capricious, or otherwise based on an error of law. See *Retirement Bd. of Brookline* v. *Contributory Retirement Appeal Bd.*, 33 Mass. App. Ct. 478, 480 (1992); *Flanagan* v. *Contributory Retirement Appeal Bd.*, 51 Mass. App. Ct. 862, 864 (2001). In reviewing a CRAB decision, courts must "give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it." *Dube* v. *Contributory Retirement Appeal Bd.*, 50 Mass. App. Ct. 21, 23 (2000), quoting from G. L. c. 30A, § 14(7). See *Rockett* v. *State Bd. of Retirement*, 77 Mass. App. Ct. 434, 438 (2010).

On appeal, we review whether a CRAB decision was unsup-

ported by substantial evidence; however, we review CRAB's legal conclusions de novo and give no special weight to the Superior Court's decision. See *Flanagan, supra* at 864; *Damiano* v. *Contributory Retirement Appeal Bd.*, 72 Mass. App. Ct. 259, 261 (2008). Although we are thus charged with the duty of statutory interpretation, "[w]here an agency's interpretation of a statute is reasonable, the court should not supplant it with its own judgment." *Boston Retirement Bd.* v. *Contributory Retirement Appeal Bd.*, 441 Mass. 78, 82 (2004), quoting from *Flemings* v. *Contributory Retirement Appeal Bd.*, 431 Mass. 374, 375 (2000).

2. *Classification pursuant to G. L. c. 32, § 3(2)(g).* The applicable portion of G. L. c. 32, § 3(2)(g), amended by St. 1979, c. 485, § 1, defines Group 2 members as "employees of the commonwealth or of any county, regardless of any official classification, except the sheriff, superintendent, deputy superintendent, assistant deputy superintendent and correction officers of county correctional facilities, whose regular and major duties require them to have the care, custody, instruction or other supervision of prisoners." Group 4 membership, in turn, includes "the sheriff, superintendent, assistant superintendent, assistant deputy superintendent and correction officers of county correctional facilities." G. L. c. 32, § 3(2)(g), amended by St.1979, c. 485, § 2.

We have not had prior occasion to determine whether an employee who performs duties of a correction officer, but does not have that job title, should be classified in Group 2 or Group 4. In the circumstances presented, however, we see no reason to depart from our analysis in *Gaw, supra* at 254. In that case, we reviewed G. L. c. 32, § 3(2)(g), to determine whether an employee of a municipal electric power plant should have been classified in Group 1 or Group 4.[2] *Ibid.* We concluded that the statute classifies employees in "Group 4 by naming their posi-

---

[2]The employee in *Gaw* sought membership in Group 4 under the following provision of G. L. c. 32, § 3(2)(g), as amended through St. 1970, c. 622, § 2: "employees of a municipal gas or electric plant who are employed as linemen, electric switchboard operators, electric maintenance men, steam engineers, boiler operators, firemen, oilers, mechanical maintenance men and supervisors of said employees." See *Gaw, supra* at 251.

tions or titles rather than . . . the type of work they perform."
*Ibid.*

The same is true for classification in Group 2, with two excep-
tions, one of which is relevant here. *Ibid.* Group 2 specifically
excludes, by job title, "the sheriff, superintendent, deputy
superintendent, assistant deputy superintendent and correction
officers of county correctional facilities," while including all
other "employees of the commonwealth or of any county, regard-
less of any official classification, . . . whose regular and major
duties require them to have the care, custody, instruction or
other supervision of prisoners." G. L. c. 32, § 3(2)(*g*). See
*Gaw, supra* at 254-255. Consequently, an employee other than
a correction officer, whose regular and major duties involve
such activities with regard to prisoners, is properly included in
Group 2. See *ibid.* The statute thus recognizes two groups of
employees who have duties pertaining to prisoners: those who
by job title, including correction officers, are classified in Group
4, and all other employees with such responsibilities who are
classified in Group 2.

Here, CRAB's interpretation of the statute was reasonable
and in accordance with the law. See *Boston Retirement Bd., su-
pra* at 82. Furthermore, the decision of CRAB to classify Hunter
in Group 2 was supported by substantial evidence and was not
arbitrary and capricious. In denying Hunter's request for a change
in group membership, CRAB observed that Hunter listed his
job title as "Tool Room Attendant/Janitor" in his group classifi-
cation questionnaire, and that the director of human resources
for the Essex County correctional facility stated in a 1997 letter
to the county board that Hunter's position was "Tool Room
Attendant." Although CRAB recognized that Hunter's job
description included the direct supervision of inmates, this
responsibility did not entitle him to be considered a correction
officer for purposes of Group 4 membership. CRAB correctly
determined that because none of Hunter's job titles was specifi-
cally named in Group 4, Hunter was not entitled to classifica-
tion in that group. See *Gaw, supra* at 254-255.

Hunter relies on *Maddocks* v. *Contributory Retirement Appeal
Bd.*, 369 Mass. 488 (1976), in claiming entitlement to Group 4
membership. *Maddocks* involved an appeal for reclassification

from Group 1 to Group 2. The Supreme Judicial Court held that the statutory language used to classify Group 2 membership clearly contemplates a consideration of an employee's "regular and major" duties in addition to his or her job title if the employee is a county or Commonwealth employee whose regular and major duties require the performance of certain tasks of a hazardous nature. *Id.* at 493-494. As we recognized in *Gaw, supra* at 254-255, this clause is an exception to the Legislature's general pattern of determining membership based on job title or position. Here, CRAB classified Hunter in Group 2 based on his regular and major duties in accordance with *Maddocks*. Nothing in *Maddocks*, however, would suggest that we extend this analysis to the specific language in Group 4.

Hunter's reliance on *Tabroff* v. *Contributory Retirement Appeal Bd.*, 69 Mass. App. Ct. 131, 135 (2007), is also misplaced. In that case we had to determine if an employee with the job title "Supervising Electrical Engineer" qualified for Group 4 retirement status even though that job title does not appear in Group 4.[3] To make that determination, we looked to the statute, which includes as members of Group 4 those "employed as . . . supervisors" of municipal linemen. G. L. c. 32, § 3(2)(g), as amended, St. 1993, c. 139. Having done so, we concluded that membership in Group 4 requires the supervision of linemen, but not simply as an incidental aspect of one's duties. *Tabroff, supra* at 135. Rather, we determined that Group 4 membership requires that an employee be specifically "employed as a supervisor" of municipal linemen, as was the case with Tabroff, who was a "Supervising Electrical Engineer" hired to perform that particular function. *Id.* at 132, 135.

The critical distinction between *Tabroff* and the present case is that in *Tabroff*, the employee's job title and corresponding duties specifically qualified him for Group 4 membership. *Id.* at 135. By contrast, Hunter asks us to ignore his job title, then look at functions he performed and, on that basis, treat him as

---

[3]*Tabroff* involved a provision in the statute that classified for Group 4 purposes "employees of a municipal gas or electric generating or distribution plant who are employed as linemen, electrical switchboard operators, . . . and supervisors of said employees who shall include managers and assistant managers." G. L. c. 32, § 3(2)(g), as amended, St. 1993, c. 139. See *Tabroff, supra* at 132.

constructively having a job title (correction officer) that would make him eligible for Group 4. What he urges is inconsistent with the statute and our reasoning in *Tabroff.* See *Commonwealth* v. *Hamilton,* 459 Mass. 422, 436 (2011), quoting from *Commonwealth* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.,* 352 Mass. 617, 618 (1967) ("None of the words of a statute is to be regarded as superfluous"). Moreover, it is inconsistent with a plain reading of the definition of Group 2, which recognizes that there are employees "whose regular and major duties require them to have care, custody, instruction or other supervision of prisoners" without being considered a "correction officer" within the meaning of Group 4. G. L. c. 32, § 3(2)(*g*).

3. *Effect of G. L. c. 34B, § 14, on Hunter's classification.* Hunter argues that once the county board classified him in Group 4, even if it were error to do so, G. L. c. 34B, § 14(*a*), prohibited the State board from later changing his classification.[4] We disagree. We see no reason why CRAB cannot correct an erroneous classification. See, e.g., G. L. c. 32, § 20(5)(*c*)(2), amended by St. 2000, c. 159, § 91 (providing that "[w]hen an error exists in the records maintained by the system or an error is made in computing a benefit . . . the records or error shall be corrected and as far as practicable"). See also *Hollstein* v. *Contributory Retirement Appeal Bd.,* 47 Mass. App. Ct. 109, 110-112 (1999) (discussing authority of Boston retirement board to correct errors in retirement calculations).

*Judgment affirmed.*

---

[4]Pursuant to G. L. c. 34B, § 14(*a*), inserted by St. 1999, c. 127, § 53, various "employees of the sheriff of an abolished county . . . shall be transferred to the commonwealth with no impairment of employment rights held immediately before the transfer date . . . without impairment of . . . retirement or other rights of employees."