Sikora, Mitchell J., J.
RULING
Upon consideration of the complaint and of oral argument by counsel for all parties presented at the hearing of August 28, 2006, the court hereby DENIES plaintiff Mark Curtin’s request for preliminary injunctive orders barring the Registry of Motor Vehicles from immediate suspension of his driver’s license as an “immediate threat to the public safely” within the meaning of G.L.c. 90, §22(a).
REASONING
Plaintiff Mark Curtin must satisfy the requirements for a preliminary injunction set out in the leading precedent of Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 616-22 (1980). He must demonstrate (a) a likelihood of success upon the ultimate merits of his claims; (b) the threat or presence of actionable or inequitable irreparable harm in the absence of preliminary injunctive assistance; (c) the absence or the lesser degree of harm to the opposing party from the imposition of the requested preliminary injunction; and (d) the significance of a public interest, if any is present in the circumstances of the dispute. The judge must consider these criteria in combination and not in isolation. In the assessment of any harm, *485 detriment, or burden, the court must always ask whether those consequences are actionable or inequitable in light of the governing law of the circumstances. “What matters as to each party is not the raw amount irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party’s chance of success on the merits. Only where the balance between these risks cuts in favor of the moving party, may a preliminary injunction properly issue.” Packaging Industries Group, Inc., 380 Mass. at 617.
We will apply these criteria to the facts presented thus far by the present case. As presently known, those facts are that on February 25, 2006, Mr. Curtin was operating a company dump truck at 12:15 a.m. on Pleasant Street in Weymouth; that he lost control of the dump truck, went off the road, and knocked down a utility pole. He suffered injuries and went to the hospital. At the hospital, medical personnel drew a blood sample. The sample produced a serum alcohol reading of 265. At a later date, perhaps as late as early June of 2006, Weymouth Police obtained a conversion of that result to a blood alcohol weight reading of .23. On June 15, 2006, the Weymouth Police sought the immediate suspension of Curtin’s license under the terms of the “immediate threat” provision of c. 90, §22(a). The police cited him for a fourth offense of operating under the influence of intoxicating liquor. The Superior Court papers indicate that Mr. Curtin previously had experienced (a) a continuance without a finding of that offense in 1976; (b) a finding of guilty in 1977; and (c) a finding of guilty in 1988. For purposes of civil license sanction for multiple prior offenses of operating under the influence, a continuance without a finding may count as an offense. G.L.c. 90, §24(1)(d).
The Registry imposed the suspension on grounds of immediate threat to the public safety. Mr. Curtin received the statutoiy post-suspension hearing within 30 days. The Registry left the suspension in place. The codefendant Board of Appeal subsequently affirmed the “immediate threat" suspension.
Mr. Curtin appeals that decision to the Superior Court under G.L.c. 30A, §14(7) as arbitraiy, capricious, and abusive of discretion; as unsupported by substantial evidence; and as unwarranted by any administrative findings of fact. The central contention of Mr. Curtin at this preliminary injunction stage of the appeal of the administrative action to the Superior Court is that the factual circumstances do not substantiate the conclusion of an “immediate threat to the public safety” (a) because the last previous conviction for operating under the influence occurred in 1988 or approximately 18 years before the current event; and (b) because the Weymouth police effectively permitted Mr. Curtin to drive for the interval of approximately 3 1/2 months from the time of the accident at the end of Februaiy until the middle of June (when they appeared to have appreciated the conversion of the blood alcohol reading and when they sought the “immediate threat” suspension from the Registry).
1. The Merits
The question under the merits criterion is whether the Registry acted unreasonably in the present circumstances. It appears that the agency had information that on February 25, 2006, Mr. Curtin drove a dump truck off the road at 12:15 a.m.; that he knocked over a utility pole; and that his blood alcohol content of .23 approximately tripled the actionable level of .08. The Registry was aware also that, in 1976, 1977 and 1988, Mr. Curtin had suffered a continuance without a finding and two guilty findings, respectively, of operating under the influence. It appears also that the Registry knew that Mr. Curtin had confronted charges of the same offense in 1975 and in 1990, and had achieved findings of not guilty. He has yet to proceed to trial upon the 2006 charge.
For the following reasons, I cannot conclude that the Registry has acted irrationally or unfairly to this point. First, it was entitled to weigh heavily the February accident and the Februaiy alcohol reading. The accident was serious. It involved a large vehicle, and fortunately no other vehicles. Also, it generated an extraordinary high blood alcohol reading and the inference of comparably high consumption. The Registry was entitled to consider the history of Mr. Curtin, including the arguably remote events of the 1970s and 1980s. Those events would permit the reasonable inference that his problem of operating under the influence may be chronic, long-term, and still uncured.
The lull of 3 1/2 months by the Weymouth Police Department does not render the action of the Registry as irrational or unreasonable. The failure of the police to appreciate the blood alcohol reading or the failure to act upon it does not stop either the police or the Registry from acting to serve the public safety. The overriding interest in public safety bars the application of any estoppel doctrines to the government’s failure to pursue it as diligently as it might have.
See especially Dagostino v. Department of Correction, 52 Mass.App.Ct. 456, 458-59 (2001) (comprehensive discussion and collection of authorities). See also LaBarge v. Chief Administrative Justice of the Trial Court 402 Mass. 462, 468 (1988); Doris v. Police Commissioner of Boston, 52 Mass. 443, 449-50 (1978); and Attorney General v. Methuen, 236 Mass. 564, 578-79 (1921).
For these reasons, Mr. Curtin does not presently enjoy a likelihood of ultimate success upon the merits of his claim against the “immediate threat” suspension.
*486 2. Irreparable Harm
The suspension of Mr. Curtin’s license is extremely harmful to his daily activities, possibly his livelihood. However, as emphasized above, the question for the court is whether the law makes that harm wrongful or inequitable. Here, the legal merits presently visible would permit the Registry to impose an immediate interim suspension by reason of the seriousness of the February accident, the seriousness of the blood alcohol reading, and the history of operating under the influence as an inferable chronic and ongoing problem and threat to the safeiy of others.
3. and 4. Harm to the Governmental Parties.
The Public Interest.
The final two factors for preliminary injunction analysis combine as one in the present circumstances. The defendant governmental agencies argue that an injunction (a) will harm their public safety policies; and (b) that those policies embody an obvious public interest. They characterize the public policy interest as the protection of highways from intoxicated driving. The reasoning is that the immediate return of Mr. Curtin to the highways would bring with it the risk of operating under the influence. As usual, injunction analysis requires the assessment of the probability of the danger and of the seriousness of the danger. Here the probability of the danger is always speculative: will a suspected intoxicated driver reoffend? The gravity of the risk is clearer: reoffense will expose innocent members of the public to the risk of death or serious injury. The gravity of the risk would justify the Registry’s caution. Importantly, the “immediate threat” suspension will last only during the interim until the adjudication of the charges of operating under the influence on February 25, 2006, reach a result in the District Court. Counsel at the hearing informed me that the case will reach trial reasonably soon. If Mr. Curtin achieves a finding of not guilty, he will have new ground for requested withdrawal of the “immediate threat” suspension. If that trial results in a finding of guilty, the “immediate threat” suspension will convert to a statutory license sanction for four convictions of operating under the influence. G.L.c. 90, §24(l)(c)(3). The inherently temporary nature of the “immediate threat” suspension reduces its weight as a harm balanced against the threat to public safeiy from continuing operations of motor vehicles during the pretrial interim.
CONCLUSION
The “immediate threat” suspension by the Registry does not appear to be unlawful. The balance of harm between Mr. Curtin, on the one side, and the public safety interest, on the other, does not favor his position. The “immediate threat” suspension is temporary and will convert reasonably promptly to a result based upon the outcome of the trial of the criminal charges. For these reasons, a preliminary injunction against the interim suspension is not justified.'