Curran, Dennis J., J.
INTRODUCTION
Antonio Ledonne brings this action under G.L.c. 30A, §14, appealing a decision by the Board of Appeal on Motor Vehicle Liability Policies and Bonds (the Board) that affirmed the Registrar of Motor Vehicles’ decision to indefinitely suspend Mr. Ledonne’s driver’s license under G.L.c. 90, §22(a) as an immediate threat to the public safety.
This matter is before the court on Mr. Ledonne’s motion for judgment on the pleadings under Mass.R.Civ.P. 12(c). After reviewing the pleadings and the administrative record, Mr. Ledonne’s motion for judgment on the pleadings is ALLOWED, and the case is REMANDED to the Board for further findings consistent with this decision.
BACKGROUND
Mr. Ledonne has a lengthy and wholly unsympathetic record of driving-related violations and criminal convictions. He has been convicted of operating under the influence (OUI) on ten separate occasions between 1980 and 1997. Eight of these convictions occurred after his license had been already suspended or revoked. He also has five convictions for operating to endanger, as well as myriad other criminal convictions unrelated to the operation of a motor vehicle. Indeed, Mr. Ledonne was incarcerated for two and a half years in 1997. But for more than twelve (12) years, i.e., since his release from incarceration, he has neither driven a motor vehicle nor possessed a valid driver’s license. Moreover, in those dozen years, he has striven for personal redemption in overcoming his alcohol addiction through compelling and exemplary efforts.
On July 6, 2000, the Registrar revoked Mr. Ledonne’s license for ten years because of an OUI conviction.[2] In a letter dated July 18, 2000 (an “immediate threat” letter), the Registrar notified Mr. Ledonne that his license would also be suspended indefinitely as a result of the Registrar’s finding that he constituted an “immediate threat” to public safety under G.L.c. 90, §22(a) (the “immediate threat” statute). The immediate threat letter identified the date and operating violation as “July 17, 2000 Immediate Threat/Boston.” The letter also informed Mr. Ledonne: “The following suspensions/revocations are also in effect on your license or right to operate.
Effective Suspension or
Date Revocation Period
08/10/94 Suspension 5 Surcharge Events Indefinite
07/06/00 Revocation DWI Liquor 10 Years
03/20/98 Revocation Habitual Traffic Offender 4 Years 07/07/99 Suspension Chem Test Refusal 1 Year
06/24/94 Revocation DWI Liquor 5 Years
12/03/98 Suspension 7 Surcharge Events 60 Days
Additional suspensions/revocations appear on your record."
Both of these Registrar decisions occurred three years after Mr. Ledonne’s 1997 conviction and did not result from any new driving infraction.
Mr. Ledonne unsuccessfully sought a hardship license from the Registrar in 2001 and 2004. In 2009, Mr. Ledonne again unsuccessfully sought reinstatement of his license from the Registrar. He appealed that Registry decision to the Board, which affirmed its decision.
In 2011, after his ten year OUI-related revocation had ended, Ledonne again appealed the 2009 Registrar decision to the Board. Ledonne submitted evidence of substantial and impressive rehabilitative efforts. The Registrar countered with Ledonne’s lengthy record of driving and other criminal convictions.
Following a de novo review, the Board affirmed the Registrar’s 2009 decision. Ledonne now appeals the Board’s decision under G.L.c. 30A, §14.
STANDARD OF REVIEW
Under G.L.c. 30A, §14(7), this court may affirm the decision of the Board, remand the matter for further proceedings before the Board, set aside or modify the decision, or compel any action unlawfully withheld or unreasonably delayed, if it determines that the substantial rights of any party may have been prejudiced *38 because the Board’s decision is based upon an error of law, unsupported by substantial evidence, unwarranted by facts found by the court on the record as submitted, is arbitraiy or capricious, an abuse of discretion, or otherwise not in accordance with law. G.L.c. 30A, §14(7). “The court shall give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it.” Id.
Mr. Ledonne, who is appealing the administrative decision, bears the burden of demonstrating the decision’s invalidity. Merisme v. Board of Appeals on Motor Vehicle Liab. Policies & Bonds, 27 Mass.App.Ct. 470, 474 (1989). This Court may not substitute its judgment for that of the agency. Southern Worcester County Reg'l Vocational Sch. Dist. v. Labor Relations Comm’n, 386 Mass. 414, 420-21 (1982). It also may not dispute an administrative agency’s choice between two conflicting views, even though the court would justifiably have made a different choice had the matter come before it de novo. Zoning Bd. of Appeals of Wellesley v. Housing Appeals Comm., 385 Mass. 651, 657 (1982). However, “to the extent that an agency determination involves a question of law, it is subject to de novo judicial review.” Raytheon Co. v. Director of Div. of Employment Security, 364 Mass. 593, 595 (1974).
DISCUSSION
In this case, the Board’s decision to affirm Ledonne’s driver’s license suspension is based on an error of law, and therefore, the Board’s decision must be annulled. See G.L.c. 30A, §14(7).[3]
Massachusetts courts give great deference to decisions of administrative agencies. Nuclear Metals, Inc. v. Low-Level Radioactive Waste Mgmt. Bd., 421 Mass. 196, 211 (1995). However, the deference normally accorded to an administrative agency’s decision is no longer appropriate when that agency commits an error of law. G.L.c. 30A, §14(7)(c). Tabroff v. Contributory Ret. Appeal Bd., 69 Mass.App.Ct. 131, 134 (2007).
While all reasonable interpretations of a statute by an agency are entitled to deference, “(a]n erroneous interpretation of a statute by an administrative agency is not entitled to deference.” Woods v. Executive Office of Cmtys. & Dev., 411 Mass. 599, 606 (1992). “If an agency interpretation were to collide with the plain meaning of a statute, the agency view would have to give way.” Anheuser-Busch, Inc. v. Alcoholic Beverages Control Commission, 75 Mass.App.Ct. 203, 209 (2009).
Interpretation of a statute is a question of law, which the court reviews de no do. [4] Protective Life Ins. Co. v. Sullivan, 425 Mass. 615, 618 (1997). The court interprets a statute “according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language . . . (and) the statutory language itself is the principal source of insight into the legislative purpose.” Registrar of Motor Vehicles v. Board of Appeals on Motor Vehicle Liability Policies & Bonds, 382 Mass. 580, 585 (1981). “[A] statute must be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous.” Bankers Life & Cas. Co. v. Commissioner of Insurance, 427 Mass. 136, 140 (1998) (internal citation omitted). The court must give effect to each word and phrase in a statute, and seek to avoid an interpretation that treats some words as meaningless. See Milford v. Boyd, 434 Mass. 754, 757 (2001).
The plain language of the “immediate threat” statute requires a different interpretation than that offered by the Board. The immediate threat statute requires that the Registrar find the “holder" of a license pose such a significant threat to public safety, that the license should be suspended or revoked. G.L.c. 90, §22(a). Additionally, the statute requires that the Registrar provide the operator with a notice specifying the time and place of the violation that led to the suspension. Id. It also permits the Registrar to demand the immediate return of the operator’s license. Id, Taken together, these requirements contemplate a situation in which the Registrar revokes or suspends the validly held license of an operator who has recently acted in such a manner as to be a threat to the public safety. If the statute was meant to apply to individuals without a valid license, the legislature would not have used the specific words “holder” or “continuing operation.” Those whose licenses have been revoked are not holders of a license, nor can they, legally, continue to operate motor vehicles. The additional requirement of a notice specifying “the time and place of the violation” clearly indicates that the suspension is meant to be based on a relatively recent violation, not a general review of the operator’s driving history.[5]
The Board’s decision is also inconsistent with Longo v. Board of Appeal on Motor Vehicle Liability Policies & Bonds, which was decided under the predecessor statute to G.L.c. 90, §22(a). Longo, 356 Mass. 24 (1969). In Longo, the court held that “(i]n order to deprive an operator of his license without a hearing, the statute seems to require that a violation should be such as to indicate the likelihood of further improper operation continuing into the near future and so serious as to justify the prompt removal from the public ways of an operator who has become an immediate threat to the general safety. In other words, the statutory purpose seems to prescribe that there should be an emergency aspect to authorize summary administrative procedure to supersede ordinary requirements of due process.” Id. at 26-27 (emphasis added).
Three months after the Longo decision, the legislature adopted the “immediate threat” language of G.L.c. 90, §22 (a) and substituted it for the standard applied under Longo.[6] The previous iteration of the statute contained no mention of an “immediate threat,” while the Longo decision clearly does.[7] See id. at 27. There *39 fore, the current version of §22(a) should be read to require the same “emergency aspect” that the court required in Longo. Because Mr. Ledonne’s driver’s license was already revoked for ten years at the time of his suspension under §22(a), there was no emergency aspect under which the Registrar’s action was authorized. The Board’s argument on appeal that Longo should not apply to this case runs counter to the history of the statute where it appears that Longo was actually the impetus for the current version of the statute.
The limited cases involving the “immediate threat” statute also support Mr. Ledonne’s contention that the statute is intended to be used to suspend the validly held driver’s license of someone who has committed a recent driving violation. Powers v. Commonwealth, 426 Mass. 534, 535-36 (1998) (license suspended after recent accident involving alcohol): Andonian v. Registrar of Motor Vehicles, 29 Mass.App.Ct. 942, 942-43 (1990) (dicta statement that one or more convictions for failure to stop or obey traffic signals could constitute an immediate threat); Curtin v. Registry of Motor Vehicles, 2006 WL 2855020 (Mass.Super.Ct., Sept. 19, 2006) [21 Mass. L. Rptr. 484] (valid suspension based on recent OUI charge where court notes the “temporary nature” of immediate threat suspension).[8]
Here, when the Registrar decided to suspend Mr. Ledonne’s license under the immediate threat statute, his license had already been suspended or revoked at least six times over. The Registrar letter dated July 18, 2000 makes clear that Mr. Ledonne’s driver’s license had been revoked for the next ten years beginning on July 6, 2000. The suspension under the immediate threat statute was thus redundant for the next ten years. The Registrar’s action under the immediate threat statute would therefore do nothing further to protect the public safely until July 4, 2010, ten years into the future. Consequently, there was no immediate threat to the public safety for the Registrar to act upon, rendering the Registry’s July 6, 2000 decision void as a matter of law. Because Mr. Ledonne’s license was still revoked for the ten-year period when he appeared before the Registrar in 2009, the Registrar’s 2009 decision is equally invalid.
Mr. Ledonne’s 2011 appeal to the Board occurred after the ten-year revocation had expired. The Board’s decision found — almost fifteen years after Mr. Ledonne last held a license — that he was an “immediate threat.” This finding was incorrect. Assuming arguendo that the Board’s decision is a new determination of an immediate threat, it is still an error.[9] The immediate threat statute was intended as an emergency measure to empower the state to quickly remove motorists from the roads who pose a threat to the public safety without violating their due process rights. The plain language of the statute simply does not allow its application in a situation where the operator does not possess a license and has not driven a vehicle in over a decade.
In addition, Mr. Ledonne is not a license “holder” as contemplated by the statute. The “immediate threat" letter the Registry sent him did not specify the time or place of any actual violation. Instead, it simply stated that he was an immediate threat. While “[w]ide discretion is vested in the [Registrar as to the revocation or suspension of licenses . . . his discretion is not be exercised arbitrarily or without regard to the purposes for which his authority to revoke or suspend is granted.” Wall v. Registrar of Motor Vehicles, 329 Mass. 70, 73 (1952). Here, the Board and the Registrar did not exercise their discretion properly. Mr. Ledonne’s initial suspension did nothing to further the public safety and the Board’s decision in 2011 was an incorrect application of the immediate threat statute.[10]
ORDER
For the foregoing reasons, Mr. Ledonne’s motion is ALLOWED and the case is REMANDED to the Board for findings consistent with this decision.
Accordingly, on remand, the Board should conduct the following inquiiy when deciding if Mr. Ledonne constitutes an immediate threat to the public safety:
1) Is Mr. Ledonne a valid license “holder” as contemplated by the statute?
2) What was the time and place of the violation that created the necessity for action under G.L.c. 90, §22(a)?
3) Does substantial evidence exist to demonstrate that Mr. Ledonne poses a threat to the public safety if permitted to operate a motor vehicle?
4) What is the nature of the “immediacy” that forces the Registrar to act under the immediate threat statute?

 The ten-year period expired on July 4, 2010.

 Because the court finds that the Board’s decision was based on an error of law, it will not address Ledonne’s substantial evidence and procedural due process arguments.

 The “Immediate threat" statute, G.L.c. 90, §22(a), reads in pertinent part:
The registrar may suspend or revoke without a hearing any certificate of registration or any license issued under this chapter whenever the holder thereof has committed a violation of the motor vehicle laws of a nature which would give the registrar reason to believe that continuing operation by such holder is and will be so seriously improper as to constitute an immediate threat to the public safely... Such notice shall specify the time and place of the violation. The registrar may order the license of such operator ... to be delivered to him . . . Said operator shall be entitled to a hearing within thirty days of the suspension or revocation . . .

 The Registrar has other statutory tools available for keeping unsafe drivers off the road. See G.L.c. 90, §22(b) (suspension or revocation if operator is adjudged incompetent or incapable of operating vehicle properly); G.L.c. 90, §24(1)(c)(3 3/4) (permanent revocation of license of operator with four or more OUI offenses). These statutes differ because *40 they require notice and a hearing before the suspension or revocation, unlike the immediate threat statute.

 Longo was decided on May 6, 1969. Chapter 637 of the Acts of 1969, entitled An Act Further Regulating the Right of the Registrar of Motor Vehicles to Suspend or Revoke a Certificate of Registration or a License was approved on August 6, 1969. This Act created G.L.c. 90, §22(a).

 The court in Longo examined the previous statute, St. 1923, c. 464, §6, as amended by St. 1933, c. 191, St. 1941, c. 312, St. 1962, c. 261, St. 1963, c. 276, St. 1968, c. 237, and St. 1968, c. 332.

 The Board’s reliance on Jalbert v. Registry of Motor Vehicles is not controlling. Jalbert SUCV2001-4563, Slip Op. (Mass.Super.Ct. November 25, 2002) (Burnes, J.). The Jalbert decision is based on the application of the substantial evidence rule and does not review the Board’s decision for an error of law.

 Before the Board, Mr. Ledonne was entitled to “anewtrial on all issues and a full hearing on the merits in no way limited or restricted by what had occurred at the previous hearing before the registrar." Ullian v. Registrar of Motor Vehicles, 325 Mass. 197, 199 (1950). When the Registrar takes adverse action on a discretionary matter, the action must be supported by substantial evidence. 540 Code Mass. Regs. §9.03 (1996). Thus, any decision on a discretionary matter before the Board must also be supported by substantial evidence.

 This Court is, and has been, well sympathetic to the need for the Registry of Motor Vehicles to have the tools necessary to protect the general public from dangerous drivers. But that legal weaponry simply does not apply to invoke the “immediate threat” designation for offenses long past, and for which the driver has long ago been punished.